103 So.2d 499 (1958)
Vester D. WILLIAMSON et al., Plaintiffs-Appellants,
v.
Neely ROBERTS et al., Defendants-Appellees.
No. 8775.
Court of Appeal of Louisiana, Second Circuit.
May 26, 1958.
Rehearing Denied June 20, 1958.
*500 Cook, Clark, Egan, Yancey & King, Shreveport, Gerard F. Thomas, Jr., Natchitoches, for appellant.
W. T. McCain, Colfax, for Neely Roberts.
Harry Fuller, Winnfield, for Odell Roberts and Walter Brown.
GLADNEY, Judge.
This suit for damages was instituted in Grant Parish by Vester D. Williamson and his wife, Stella J. Williamson, against Neely Roberts, Odell Roberts and Walter Brown. It arises from an automobile accident which occurred August 26, 1954, between the 1954 Ford sedan owned by Vester D. Williamson and a truck used for hauling pulpwood, owned by Odell Roberts and driven by Walter Brown. After a trial on the merits, judgment was rendered against Odell Roberts and Walter Brown and in favor of Vester D. Williamson in the sum of $5,087 and in favor of Mrs. Williamson in the sum of $17,000. The demands against Neely Roberts were rejected. An intervenor, Johnson Brothers, Inc., the compensation employer of Vester D. Williamson, was awarded the sum of $1,391, made payable *501 out of the award to Williamson. H. E. Harper, trustee in bankruptcy of the estate of Vester D. Williamson, was substituted a party plaintiff. Plaintiffs have appealed, being particularly aggrieved by that portion of the judgment denying their claims against Neely Roberts. Answers to the appeal filed in this court by Odell Roberts and Walter Brown seek reversal of the judgment against themselves and alternatively request that the quantum be reduced.
This unfortunate accident occurred on Louisiana Highway 1476 at about 8:30 A. M. when atmospheric conditions were normal. Mrs. Stella J. Williamson was driving her husband's Ford sedan in a northerly direction at a speed of 45 to 50 miles per hour, accompanied by her husband, who was seated on the front seat. While engaged in negotiating a curve in the road the car was met by an empty 1946 Ford truck used for hauling pulpwood. As the two vehicles approached each other, the truck moved to its left and crossed the center line of the highway directly into the path of the automobile. Mrs. Williamson thereupon turned onto the shoulder on her extreme right hand side of the road endeavoring to avoid the collision. Not withstanding this maneuver, the rear portion of the truck struck the left side of the automobile with such force the rear wheels of the truck became disconnected and the front portion of the truck traveled approximately 450 feet following the impact. The automobile was more or less a total loss. Mr. and Mrs. Williamson received severe personal injuries. Brown, the driver of the truck and sole occupant thereof, was not injured.
Plaintiffs allege that Walter Brown had a short while before unloaded a load of pulpwood at Winnfield and at the time of the accident was returning for another load of pulpwood.
The negligence of Walter Brown cannot be seriously disputed. Uncontradicted testimony shows the Ford automobile was far over on its right side of the highway when it was struck by the truck. Brown's excuse for being on the wrong side of the road is that as he approached plaintiffs' automobile and had reached a point just north of a store situated on the west side of the highway near the inside of the curve, a pick-up truck started backing out into the highway from the west side and into the path of his truck, thereby creating an emergency and he was forced to steer his truck to the left, at which time there was no oncoming vehicle in sight. This testimony is unsubstantiated and is completely refuted by the testimony of Sam Fowler, a disinterested witness, who testified the pickup truck was not closer than 25 to 30 feet from the highway.
The defense relies also upon the last clear chance doctrine and a plea of contributory negligence. The evidence fails to support an application of either of these legal principles. We find Mrs. Williamson was not in any wise negligent in the operation of the vehicle she was driving. Her uncontradicted testimony is that she promptly moved her vehicle as far to the right of the road as possible to avoid a collision when she observed the truck approaching in her lane of travel. The preponderance of the evidence is the truck was being operated by Brown at an excessive rate of speed and on the wrong side of the highway just prior to and at the moment of impact.
The chief argument presented on this appeal is whether the judge a quo erred in rejecting plaintiffs' demands against Neely Roberts. Anticipating that evidence would be adduced by plaintiffs to show a partnership relationship between Odell Roberts and Neely Roberts, counsel for Neely Roberts interposed an exception of no cause and no right of action and strenuously objected on the trial of the case to the admission of any evidence to indicate such a status. In brief filed before the trial court, counsel for plaintiffs stated: "The petition in this suit under no stretch of the imagination can be held to allege that Odell Roberts and Neely Roberts are engaged in business *502 as a partnership." But the liability of Neely Roberts is argued by counsel on the theory he and his son, Odell Roberts, were engaged in a joint venture. In a very thorough and careful opinion by the trial court, the circumstances forming the basis for this contention are appropriately stated:
"The facts disclose that on August 16, 1954, Mr. Henry Kieffer sold to Odell Roberts all timber except oak on certain lands in Winn Parish for the sum of $650.00. An agreement was drawn up and executed before Mr. Lloyd J. Harrison, Notary Public in Grant Parish, Louisiana, and Mr. Neely Roberts, father of Odell, paid Mr. Kieffer by his personal check. Mr. Neely Roberts testified that he loaned his son the money to buy this timber and that it was subsequently repaid. Odell proceeded to cut the timber and in general, three categories of wood were removedpulpwood, poles and pilings and saw logs.
"Odell Roberts states that he sold the saw logs to his brother, Ona Roberts, who, with his father, operated a sawmill. Ona states that he paid the stumpage to Neely Roberts in repayment of the loan made by Odell.
"The poles and pilings, as well as fence posts, were cut and sold to the Colfax Creosote Company and the testimony shows that Mr. Neely Roberts held the stumpage in repayment of the loan which he had made to Odell.
"The poles and pilings, fence posts and saw logs were cut by personnel sent to the scene by Mr. Neely Roberts. It should be noted at this point, however, that Winn and Grant Parishes are entirely timber parishes and that it is a common practice for mills or timber operators to send people to cut either poles, piling, saw logs, etc., and to pay the laborers direct, withholding the stumpage to be paid to the owner of the land or timber.
"The pulpwood was cut by Odell Roberts and Lee Davis. Both Roberts and Davis testified that they were partners not only in this, but in other jobs and that after the labor costs and stumpage were deducted, they divided the balance equally between them. Whether there was a partnership between Lee Davis and Odell Roberts is not material to the issue in this case. Most of the pulpwood was apparently shipped at Crews, a small station a short distance from the land involved, to the International Paper Company at Springhill and the bills of lading list A. S. McColour as shipper per Neely Roberts with the signed name Odell Roberts underneath. Both Odell Roberts, Neely Roberts and Mr. Ewing, who was the agent for McColour, testified that not only with Odell Roberts but with other producers of pulpwood, Mr. Neely Roberts would advance the minimum amount on the carload of pulpwood when the bill of lading was issued. Therefore, the cars carried his name as shipper and when the `returns' came back from the mill (the actual measurement and payment for the wood) Mr. McColour would pay Ewing, his agent, Ewing would then pay Neely Roberts and Neely Roberts would then deduct what he had advanced on the car and pay the balance to the various producers. A check of the bills of lading issued in the name of Neely Roberts for the year 1954, indicates that there were approximately 117 cars of pulpwood shipped under the name of Mr. Roberts. Mr. Roberts states that Mr. Ewing was also working for the Colfax Lumber & Creosoting Company and that although he did not make one penny out of the pulpwood advances, Mr. Ewing helped him in other ways with his pole and piling business.
"On the date of this accident, however, the pulpwood from this tract of land was being hauled to the yard of L. L. Brewton in Winnfield and payment for the wood hauled on that date was made to Lee Davis and not to either Neely Roberts or Odell Roberts.
"Walter Brown, the driver of the truck, testified that he did not ever see Mr. Neely Roberts but that he was employed and paid by Odell Roberts. It is significant to note *503 that neither the names of Lee Davis nor Walter Brown appear on the withholding tax and social security returns of Neely Roberts and neither was paid as an employee of Neely Roberts.
"Mr. Neely Roberts testified that after he had been repaid the amount of his loan to Odell, he had a settlement with Odell and to the best of his memory Odell received $47.00 over and above the amount he had borrowed to purchase the timber.
"The truck involved in this accident was purchased from a Mr. Sharbino and the title is issued in the name of Odell Roberts. Mr. Neely Roberts testified that he loaned Odell the money to buy the truck as well as a pair of mules and that he was repaid by Odell.
"Mr. Neely Roberts is an illiterate man and beyond being able to sign his name, he cannot read or write. Nevertheless, he has been a very successful sawmill operator and timber dealer and he has several sons. The Court is convinced that the transaction whereby Neely Roberts loaned to Odell Roberts the money to buy the truck and the money to buy the timber was what it purports to bemerely a loan and that Odell Roberts not only received whatever profit was made off of the transaction but had the sole direction and control of this timber, pulpwood, etc.
"Although counsel for plaintiffs have quoted extracts from the record, the only thing that the extracts would purport to show, according to their view, is a doubt that Odell Roberts was really the owner of this timber but to accept their view would mean to completely disregard the testimony of Mr. Neely Roberts. This view is given additional support when you consider other salient facts in the record. Mr. Neely Roberts was a successful sawmill operator and owned a fleet of trucks, all of which were insured. Had he been the party at interest in this transaction, it is only reasonable to assume that he would have acquired the truck and timber in his own name as he did other trucks and parcels of timber and thereby placed the operation under the protection of his own insurance coverage. The Court has inspected the records of Mr. Neely Roberts which show the money received by him during 1954. Although over $200,000.00 is listed in his gross receipts and every source is itemized, not one penny is listed from pulpwood sales or operations. In addition, Mr. Ewing stated that he had never known Mr. Neely Roberts to engage in the pulpwood business.
"Mr. Neely Roberts produced in Court all of his social security and withholding tax records and the names of Lee Davis or Walter Brown do not appear on these reports as employees at any time of Mr. Neely Roberts, nor is it shown that he at any time paid them. So far as the evidence goes it does not appear that Mr. Neely Roberts at any time visited this tract of land in any capacity nor is it shown that he in any manner exercised direction over any timber cutting from this land except to send men to cut the saw logs and poles for which he paid them personally and withheld the stumpage which was due to Odell, but again this is a normal commercial practice in timber operations.
"Mr. Henry A. Kieffer was summoned as a witness but he was not called to testify nor was any attempt made to impeach the bill of sale made in favor of Odell Roberts. Lastly, part of the pulpwood from this tract of land (the record does not show how much) was sold and delivered to L. L. Brewton in Winnfield and payment therefor was made directly to Lee Davis. This does more to substantiate the version given by Lee Davis and Odell Roberts that they were in partnership than any other factor in the case. At the same time, it negatives any relationship between Neely Roberts and Odell Roberts as joint adventurers or partners."
The above statement of facts, in our opinion, is accurate and complete. It cannot be seriously disputed the truck involved in the accident was solely owned by Odell *504 Roberts and that Walter Brown was an employee hired and paid directly by Odell Roberts. The position taken by counsel for plaintiffs is that the following enumerated facts firmly establish a joint venture relationship between Odell and Neely Roberts: Neely Roberts advanced $650 in payment for Kieffer timber; he advanced the money for the purchase of the truck involved in the accident; all posts produced from the Kieffer property were purchased from Neely Roberts by Colfax Lumber & Creosoting Company; the saw logs from the Kieffer property were delivered to a sawmill owned by Neely Roberts and another son; Neely Roberts negotiated for the sale of the pulpwood from the Kieffer property and he received the money by check for the pulpwood; Neely Roberts financed the cutting of the timber from the Kieffer property through advances; and that the services of Odell Roberts in the alleged joint venture relationship consisted of the employment of Walter Brown and maintenance of the trucks and equipment.
We have carefully studied the evidence bearing upon the conclusions above set forth. It is pertinent to observe that the truck involved in the collision was engaged in hauling pulpwood at the time of the accident. As pointed out heretofore, the evidence preponderates to the effect Neely Roberts was never in the pulpwood business for profit and received no compensation for his advances upon the loaded cars of pulpwood. It is undisputed Odell Roberts prior to the accident had fully paid back the loan made to him by his father for the purchase of the truck. The money transactions of Mr. Roberts, above referred to, are typical of a banking transaction wherein the repayment of a loan is facilitated through the handling of the returns from the investment.
Counsel for plaintiffs have cited the following authorities which define joint venture: Ault and Wiborg Company of Canada v. Carson Carbon Company, 1935, 181 La. 681, 160 So. 298; Daily States Publishing Company v. Uhalt, 1930, 169 La. 893, 126 So. 228; Young v. Reed, La.App.1939, 192 So. 780; Kennedy v. Perry Timber Company, 1951, 219 La. 264, 52 So.2d 847, and Posey v. Fargo, 1937, 187 La. 122, 174 So. 175. The foregoing authorities uniformly declare a joint venture to be an undertaking by two or more persons to combine their property or labor in the conduct of a particular line of trade or business for joint profits, thus creating the status of a partnership, although the facts do not show a formal partnership. In order for such a relationship to exist there clearly must be the intention of the parties to create such a status for a profit motive. The effect of the establishment of a joint venture is to create, as between the partnership, the same liability and responsibility as is imposed upon partners.
Applying the above principles to the facts disclosed by the record herein it is our finding the evidence does not disclose any intention on the part of either Odell or Neely Roberts to create a joint venture undertaking for harvesting the timber from the Kieffer tract. The finding is the same as to the pulpwood transactions in which Neely Roberts was engaged. Accordingly, error is not manifest in the decree insofar as it rejects plaintiffs' demands against Neely Roberts.
Vester D. Williamson sustained a sprain of the muscles and soft tissues of his neck and back and suffered lacerations about the head and face. He was hospitalized and received treatment by Drs. J. P. Sanders and H. K. Faludi. Dr. Faludi diagnosed his case as a whiplash injury to the neck with occipital severe pain (occipital neuralgia) on the right and a lumbosacral sprain. Williamson testified he lost 16 weeks from his work which paid him wages of $75 per week. His hospital bill amounted to $612, and that of Mrs. Williamson was $2,175. The court allowed an award of $1,500 for personal injuries and approved loss of wages amounting to $800, *505 which sums added to the two medical bills, made a total award of $5,087. Mr. Williamson also claimed the sum of $250 for damages by reason of the loss of his car, his testimony being that the stated amount was the difference between what he had paid for his car, which was new when wrecked, and a new car. No further proof of property loss was offered and we concur in the findings of the trial judge to the effect the evidence so adduced was insufficient to substantiate this item of damage. We approve of the award to Mr. Williamson as made by the district judge.
Mrs. Williamson sustained injuries which have resulted in the almost total loss of the use of her left arm. Following the accident she was taken to a hospital in Winnfield where she received temporary treatment and was then transferred to the North Louisiana Sanitarium in Shreveport. Her left hand was almost completly severed from her arm and surgery was resorted to to re-attach the hand to the arm. Four fingers of the left hand were found to be similarly severed and were re-attached through operative procedure. Her injuries included a complete comminuted fracture of the left ulna with dislocation of the head of the radius; a defect in the distal end of the radius in the region of the styloid; bruises and brush burns about her face and entire body; and a sprain of the muscles of her back. The fragments of the bone in Mrs. Williamson's left forearm were replaced and a Rush pin driven down the medullary canal into the distal fragments in order to secure the ulna. During the course of the first operation there were found divisions of the abductor pollicis tendon and the flexor carpiradialis tendon, and likewise the palmaris longus tendon was found to be divided. On December 2, 1954, after the Rush pin began to protrude outside the skin, surgery was again resorted to in an attempt to graft bone taken from the pelvis. There can be little doubt that plaintiff endured a great deal of pain and suffered intensely before, during, and after these operations. Mrs. Williamson now has but little, if any, use of her left arm, a condition which will remain permanent. Other serious injuries were a cut over her left eye which required four stitches to close, contusions to her face, arms and shoulder, and a fracture of the cheek bone. At the time of the trial of the case, scars upon her arm were clearly visible upon observation and her left cheek bone appeared depressed. The fingers on her left hand have a deformity and she is unable to grip or do any type of work with her left hand. On account of her injuries the district court allowed $7,500 for pain and suffering, $7,000 for permanent disability and the sum of $2,500 for disfigurement, or a total of $17,000. Mrs. Williamson has requested this court to increase the total award in her favor by $3,000 for permanent disability, and $1,000 for permanent disfigurement, or a total of $4,000. At the time of the accident she was 39 years of age, with a life expectancy of 28 years. A careful review of the evidence discloses the increase sought has merit and should be allowed. We, therefore, approve a total award of $21,000 for Mrs. Williamson.
The award in favor of Vester D. Williamson (H. E. Harper Trustee of the Estate of Vester David Williamson, Bankrupt) is approved and affirmed, it being neither inadequate nor excessive.
For the reasons aforesaid, the judgment from which appealed is amended by increasing the sum allowed Stella J. Williamson to $21,000, and as so amended, is affirmed. Costs, including costs of this appeal, are assessed against Odell Roberts and Walter Brown.