CHASEZ, Judge.
Louis J. Hauth, individually, and as administrator of the estate of the minor, Joseph Hauth, sued for damages for an injury which occurred to his son, Joseph Hauth. The lower Court awarded $826.00 to Louis J. Hauth and $10,000.00 for the injury to Joseph Hauth. The defendants, Schwegmann Bros. Giant Supermarket and its insurer, Highway Insurance Company, and Emile Iacoponelli and his insuror, Netherlands Insurance Company, were cast in judgment for these awards jointly and in solido. The defendants have appealed from the judgment.
The Hauth child received his injury from a coin-operated mechanical hobby horse such as is commonly seen at supermarkets, playgrounds and other places where children are likely to be found. The horse was located at the Schwegmann Bros. Supermarket on Veterans Highway, Jefferson Parish, and was owned by Emile Iacoponel-li. The Hauth family, consisting of the plaintiff, his wife, his son Joseph and two other children, aged and 4i/¿ years, had just completed their grocery shopping. Mr. Hauth took the oldest child and went into the shoe store of the Schwegmann complex. Mrs. Hauth waited a few feet away, near the horse, with the other two children and .the groceries. The 4j/¿ year-old wanted to ride the horse and the mother allowed him to do so. She and Joseph, who was the youngest at a little over three years, were standing close to the horse, and as the mother was watching her child ride, she heard Joseph scream. The boy had part of his right index finger and part of his thumb *427 crushed by placing his hand on the exposed shaft between the base and the horse. There was a sliding collar on the shaft which had come down to strike a protruding pin on the shaft, and the boy had placed his hand on the shaft between the collar and pin. Mr. Iacoponelli testified that the machine was defective in that the collar was not supposed to slide as far down as the pin. There was no protective shield or cover around the collar and shaft.
The defendants, Schwegmann Bros. Giant Supermarket and Highway Insurance Company, argue that, contrary to the trial Judge’s finding, the relationship of Schweg-mann Bros, and Mr. Iacoponelli was that of lease rather than joint venture. The record discloses that Mr. John Schwegmann, Jr., testified that he had an oral lease with Mr. Iacoponelli regarding this transaction; the testimony shows that Mr. John Schweg-mann, Jr. and Mr. Iacoponelli orally agreed that Iacoponelli was to place several mechanical devices for child amusement in the Supermarket for use during store hours; the gross revenues from these machines were to be divided between Schwegmann Bros, and Mr. Iacoponelli on the basis of 40% to the former and 60% to the latter.
Mr. Iacoponelli admits ownership of the machines and states that the licenses for their operation which had to be displayed at the store were procured in his name and for his account by Schwegmann Bros, but were purchased from the gross revenues produced by the operation of said machines before any payments were made to the principal parties; and though his evidence is somewhat vague, its tenor is that this was done by Schwegmann at his request.
Regarding the question of joint venture or lease, again Mr. Iacoponelli was vague in his evidence, but on cross examination did state:
“Q. And you went in there, and then on the basis of the rental he was to get forty per cent?
A. Right.
Q. And you were to keep the balance?
A. Sixty per cent.
Q. There was nothing else charged, any charges to you or to him or anything else, you maintained everything other than you went in on his lights, is that correct?
A. Pardon me, I didn’t understand you.
Q. Schwegmann never decided whether the horse needed to be painted, did he?
A. No sir.
Q. He would never decide the horse needed to be repaired, did he ?
A. Well, at times he would ask me.
Q. He would call you about it?
A. Yes, sir.
Q. And ask you to do something about it?
A. That’s right.
O. But you were the one who would do it, or decide whether it should be done?
A. That’s right.
Q. You had the ultimate decision, Mr. Iacoponelli ?
A. That’s right.
Q. There were no other expenses that were charged that you had that were ever charged to Mr. Schwegmann for it?
A. Well, we paid our Federal license through the earnings of the kiddy rides jointly.
Q. Did you file a separate return for these horse operations?
A. I have.
Q. Did Mr. Schwegmann or anybody connected with Schwegmann’s Store *428 ever sign any kind of tax form with you for the operation?
A. Mr. Anthony Schwegmann used to send a money order to get the license.
Q. Did you ever file any returns with Schwegmann or anybody connected with Schwegmann? Did you ever file any kind of tax returns, state, city, federal yourself with Schweg-mann or anybody connected with Schwegmann for these horses?
A. When I made an income tax report I put on there Schwegmann Store No. 1, or whatever it was listed as.
Q. But you didn’t show it as a joint operation with Schwegmann, did you, that he was any partner of yours?
A. Well, I had placed it at his request. I had placed the kiddy ride in there.
Q. But when you filed returns with the various government bodies you never did put down in there that Schweg-mann or anybody connected with Schwegmann was a partner of yours in that operation, did you?
A. I don’t know just exactly how you word it.
Q. Did you ever ask anybody from Schwegmann to file a return with you involving these horses?
A. No, sir.
Q. You filed all of the returns, did you not, Mr. Iacoponelli?
A. I filed my own returns, that’s right.”
The electricity for the rides was provided by Schwegmann Bros, as part of the utility expense of running the store. All of the maintenance and repair work was done by Mr. Iacoponelli.
Mr. Iacoponelli and Schwegmann Bros, had mutually agreed where the machines were to be placed. On at least one occasion, personnel of Schwegmann Bros, had removed the machines without consulting Mr. Iacoponelli. Mr. Iacoponelli had the machines relocated to his satisfaction.
Mr. Iacoponelli testified that Mr. Schwegmann “begged” him to place the machines in the Schwegmann stores; this is emphatically denied by Mr. Schwegmann.
We do not believe the foregoing establishes a joint venture, but rather a lease. The only proven fact that suggests a joint venture is the percentage rate applied to the rental, instead of a stationary price.
However, this type of rental based on intake is not sufficient to create a joint venture in view of other factors to be considered, which indicate that Iacoponelli and Schwegmann did not contemplate a joint relationship in the field of children’s rides.
“ * * * Even where the rental or consideration for a lease is based upon compensation out of the net profits, or on a percentage of the sales of a leased business, no joint enterprise is created, but only the relation of landlord and tenant exists. Thus, where one rents a space in the store of another for the sale of a particular line of goods and pays therefor a percentage of his gross sales, the relationship created is held to be not one of joint adventure, but one of landlord and tenant. * * * ” (30 Am.Jur. p. 9S2, § 18.)
Mr. Iacoponelli owned the rides and their maintenance and repair was peculiarly in the scope of his activities, and not Schwegmann Bros. Giant Supermarket, although the store might notify Mr. Iacopo-nelli in the event a machine broke down. Mr. Iacoponelli testified that he had the ultimate decision as to whether a machine should be repaired. Further the fact that Mr. Iacoponelli determined where the machines were to be placed belies joint control by the defendants toward a common business purpose.
To quote from Crutti v. Frank, 146 So.2d 474, (La.App.1962):
“It is well established in our law that ‘there can be no joint venture or com *429 mon enterprise of legal import unless there be a community of interest in the objects or purposes of the undertaking, and an equal right to direct and govern the movements and conduct of each other in respect thereto. Each party must have some voice and right to be heard in its control or management. * * * ’
Also there must be some intent of the parties to establish a business relationship with the aspects of joint venture. Williamson v. Roberts, 103 So.2d 499, (La.App.1958).
There was no joint venture, and Schwegmann Bros. Giant Supermarket and its insurer should be dismissed from the demands of the plaintiff. The plaintiff alleges res ipsa loquitur in his petition. It does not appear from the trial court’s reasons for judgment upon what basis he held the defendants responsible. However, res ipsa loquitur does not apply to Schwegmann Bros, where they are not joint adventurers, and where the evidence does not show that there is an inference that the accident was due to the negligence of Schwegmann Bros. Giant Supermarket, rather than someone •else. See Pilie v. National Food Stores of Louisiana, Inc., 245 La. 276, 158 So.2d 162 (1963). Further, there was no showing of actual negligence on the part of Schweg-mann Bros. Giant Supermarket.
All of the defendants argue that the award of $10,000.00 for Joseph Hauth’s injury was excessive and should be reduced to :$4,000.00 or $5,000.00. The record shows that the child’s thumb is deformed, and that .approximately one-half of his right index finger is missing. The child received two operations for the injury, the second one being an amputation of the portion of the finger.
Dr. Kitziger, who performed the surgery required, testified that when he saw Joseph ihe child had partial amputation of the -thumb and index finger; that the child was in pain; that a general anesthetic was necessary three times during the course •of his treatments; that it became necessary to amputate the gangrenous portion of the index finger; and that approximately a 30% disability remained.
The report of Doctor Daniel C. Riordan was admitted into evidence by consent in lieu of a personal appearance. In part it states that Joseph’s thumb is “markedly deformed” and that in his opinion he “will have a permanent partial loss of function of the right hand estimated at 35 percent, based upon the amputation of over half of the index finger and the limitation of motion of the thumb at the proximal and distal joints”.
Taking into consideration the age of the boy, the handicap that will be with him for life, the operations necessitated, and extent of pain and suffering undergone, shown by the doctors in this matter, $10,000.00 is not an excessive amount.
The other issue raised is whether the trial judge was correct in holding Mr. Iacoponelli and his insurer responsible for the injury at all. As mentioned previously, the judge did not declare the specific reasons for so holding. Suffice it to say, though, that the record supports a finding of negligence against Mr. Iacoponelli. The machine was designed to attract young children, was admittedly defective, and there was no protective shielding around the potentially dangerous part of the machine.
The judgment below is amended to dismiss the suit of the plaintiff, Louis J. Hauth, individually and as administrator of the estate of the minor, Joseph Hauth, against Schwegmann Bros. Giant Supermarket and Highway Insurance Company, at the cost of the plaintiff.
The judgment below in favor of the plaintiff and against the defendants, Emile Iacoponelli and Netherlands Insurance Company, is affirmed. The appellants, Emile Iacoponelli and Netherlands Insurance Company, are to bear all costs incurred in the Appellate Court.
Amended and as amended affirmed.