742 So.2d 718 (1999)
Farrel PRINCE and Cheryl Prince Daix
v.
K-MART CORPORATION, et al.
No. 99-CA-253.
Court of Appeal of Louisiana, Fifth Circuit.
August 31, 1999.
*719 Mary H. Brent, Francis B. Mulhall, Metairie, Louisiana, Attorney for Appellant, Farrel Prince and Cheryl Prince Daix.
Frederic A. Miller & Associated, Donielle Carmouche Allen, Metairie, Louisiana, Attorney for Appellees, New Orleans Hamburger and Seafood Company and State Farm Fire & Casualty Company.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY and SUSAN M. CHEHARDY.
CHEHARDY, Judge.
In this personal injury action, one defendant was dismissed via summary judgment. For the following reasons, we reverse and remand.
On March 1, 1995, plaintiffs filed suit against several defendants for personal injuries resulting from an automobile accident which occurred on March 3, 1994, in the parking lot of the Magnolia Shopping Center located in the 6900-7000 block of Veterans Memorial Boulevard in the Parish of Jefferson, State of Louisiana. As plaintiff, Sarah Lou Prince, alleged in her petition, she had completed her shopping at one of the stores and was attempting to exit the parking lot in her car. Within the shopping center parking lot is a restaurant owned by defendant, New Orleans Hamburger and Seafood Company (hereafter New Orleans Hamburger), which occupies a stand-alone building near Veterans, and has its own parking area around its building. As plaintiff was approaching the exit to Veterans, she passed the entrance/exit to the New Orleans Hamburger parking area. At the same time, defendant, Anna H. Royes, was exiting the parking area of New Orleans Hamburger and apparently failed to yield to plaintiff, colliding into the passenger side of plaintiff's vehicle. Also according to plaintiff's petition, no signs or markers controlled the "intersection" where the collision occurred.
Plaintiffs' suit against New Orleans Hamburger, which leases the building and surrounding parking area from the Magnolia Shopping Center, alleges negligence and strict liability against New Orleans Hamburger in failing to mark the entrance/exit to its parking area with traffic control signs or markers.
On May 15, 1998, New Orleans Hamburger filed a motion for summary judgment, claiming that pursuant to its lease with the shopping center, it did not have *720 custody or garde of its parking area, and therefore could not be held liable for the accident. On July 17, 1998, the trial court rendered judgment in favor of New Orleans Hamburger, dismissing all claims against it and State Farm Fire and Casualty Company, its liability insurer. The trial court thereafter certified the summary judgment as a final judgment pursuant to La. C.C.P. art.1915, and plaintiffs appealed.
On appeal, plaintiffs allege two assignments of error: that inappropriate supporting documents were considered by the trial court in rendering summary judgment, and that there still remain unresolved issues of material fact. Because we find unresolved issues of material fact which preclude summary judgment, we need only address plaintiff's second assignment of error.
A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966. Recent amendments to La. C.C.P. art. 966 provide that summary judgments are designed to secure the just, speedy, and inexpensive determination of actions, and that summary judgments are now favored. Under the amended article, the initial burden of proof remains with the mover to show that no genuine issue of material fact exists. Hayes v. Autin, 96-287 (La.App. 3 Cir.12/26/96), 685 So.2d 691, 694, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41.
Summary judgments are reviewed on appeal de novo. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730. Facts are material when their existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. Id. at 751.
In its motion for summary judgment, New Orleans Hamburger argued that its lease with Magnolia Shopping Center exonerates it from any liability, either under negligence or strict liability, because it never had custody or garde of the parking area around its restaurant. New Orleans Hamburger attached a copy of its lease to its motion for summary judgment, and relies on portions of Sections 4.1, 4.2 and 8.1 of the lease as support for its argument.
Section 4 of the lease is titled "Common Facilities," and Section 4.1 describes what can be used by all tenants of the shopping center, including "parking areas, service roads," etc., which are "subject to the exclusive control, supervision and management of Lessor." Section 4.2 governs New Orleans Hamburger's "proportionate expenses of maintenance of the common facilities" and provides in part that "[f]or the purpose hereof, anything herein to the contrary notwithstanding, it shall be the obligation of Lessor to maintain the parking areas located within the confines of the area marked for the Leased Premises on Exhibit B[-1]." (emphasis ours). Section 8.1 provides in pertinent part that "[i]t is the obligation of Lessor to maintain the parking area and lights and light standards, the cost of which shall be paid by Lessor; said cost shall be an element of cost of maintenance and common facilities referred to in Section 4.2 above."
A cursory review of these excerpts of these provisions in the lease may lead one to believe that the custody and control of the parking area around the New Orleans Hamburger restaurant remain with the lessor, Magnolia Shopping Center. However, the body of the lease comprises thirteen legal pages and thirty-three different sections. There are many other provisions which address, either directly or indirectly, the parking area around the New Orleans Hamburger restaurant building. The following excerpts are from relevant portions of the March 2, 1988 lease:
Section 2.2 provides in pertinent part:

*721 The Leased Premises consists of the following:
The free-standing improvements located on the Magnolia Shopping Center area property, situated in the New Orleans Veterans Highway corner, presently occupied by Shoney's Restaurant, which improvements Lessee acknowledges having examined and knowing the location; that portion of ground outlined on Exhibit "B-1."
New Orleans Hamburger does not dispute that the parking area around its restaurant is part of the Leased Premises, as can be readily seen on Exhibit "B-1."
Section 4.1 provides in pertinent part:
Lessor shall have the right from time to time to change the size, area, grade, location and arrangement of parking areas, service roads, entrances, exits, approaches, except the entrance and exit immediately adjoining the Leased Premises, which shall be changed only with prior written consent of Lessee,.... (emphasis ours).
Section 4.2 provides in pertinent part:
In the event Lessee installs a drive-up window or windows, it will be the obligation of Lessee to install these windows at Lessee's expense, including such improvements as may be required to the parking area or the ground adjacent to said drive-up window or windows. Maintenance of the parking area adjacent to such drive-up window or windows commencing at the wall of the improvements and extending for a distance of 25' shall be at the expense of Lessee. (emphasis ours).
Section 8.1 provides in pertinent part:
... Lessor will have no obligation of maintenance for the Leased Premises whatsoever. All maintenance, interior, exterior, roof structural is the responsibility of Lessee. In the event there is any defect in the premises or any maintenance that is required of such a nature that person or property may be injured or damaged as a result thereof, it is the obligation of Lessee to advise Lessor of such defect; in said notice, Lessee shall advise Lessor of what steps are being taken to effect the repair therefor. Lessor shall have no responsibility of any nature or kind whatsoever, as recited above, to persons or property arising from such defect. (emphasis ours).
Section 16.1 provides in pertinent part:

Lessor shall not be liable for any damage from any cause whatsoever to Lessee, the property of Lessee, or to others on the Leased Premises or to their property. (emphasis ours).
Section 16.2 provides in pertinent part:
Lessee's assuming possession of the Leased Premises constitutes an admission that it has examined the Leased Premises and found them in good and safe condition. Lessee will indemnify Lessor and agrees to defend and hold Lessor harmless from any and all loss, expense and responsibility whatsoever for damages to any person whomsoever.... Lessee expressly relieves Lessor of any and all liability for injuries or damages caused by any vice or defect of the Leased Premises to any occupant or to anyone in or on the premises .... Lessor shall not be liable for any latent defect in the Leased Premises.... The above agreement applies even to those damages arising from defects which Lessor is required by this lease to repair except in the case of positive neglect or failure to take action toward the remedying of such defects within a reasonable time after receipt of written notice of such defects. Should Lessee fail promptly to notify Lessor in writing of any such defects, Lessee shall be responsible for any damages resulting to Lessor or others. (emphasis ours).
Section 16.3 provides:

If Lessor should be made a party to any litigation commenced against Lessee, Lessee shall protect and hold Lessor harmless from all loss and expense of *722 any kind, including attorney's fees, which Lessor may sustain or which may be asserted against Lessor. (emphasis ours).
Section 17.1 provides in pertinent part:
For the mutual protection of Lessor and Lessee, Lessee agrees to, at all times, maintain in full force a policy of public liability and property damage insurance with respect to the Leased Premises ...." (emphasis ours).
It is clear from a full reading of the lease that a serious question remains as to which entity, New Orleans Hamburger or the Magnolia Shopping Center, had custody and control of the entrance/exit to the New Orleans Hamburger restaurant and its parking lot at the time of the March 3, 1994 accident. Considering the broad language of the lease (which favors the lessor vis-a-vis the lessee) and the various sections of the lease which govern the "leased premises," the issue of which entity had custody and control of the area where the accident took place remains a material issue of fact. Therefore, the trial court erred in granting summary judgment in favor of New Orleans Hamburger.
For the foregoing reasons, the trial court's judgment of July 17, 1998, granting summary judgment in favor of New Orleans Hamburger and Seafood Company and State Farm Mutual Casualty Company, is hereby reversed. This matter is remanded to the trial court for further action consistent with this opinion.
REVERSED AND REMANDED.