778 So.2d 1285 (2001)
D & O CONTRACTORS, INC.
v.
ST. CHARLES PARISH, et al.
No. 00-CA-882.
Court of Appeal of Louisiana, Fifth Circuit.
February 28, 2001.
Rehearing Denied March 26, 2001.
*1286 Joel T. Chaisson, Chaisson & Chaisson, Destrehan, Louisiana, Catherine Leary, Westwego, Louisiana, for plaintiff-appellant.
Alan Zaunbrecher, Law Office of Alan A. Zaunbrecher, Metairie, Louisiana, Robert L. Raymond, St. Charles Parish, Destrehan, Louisiana, for defendants-appellees.
Chris P. Pierce, Wray & Pierce, Baton Rouge, Louisiana, for intervenor, Magnolia Construction Co., Inc.
Court composed of Judges SUSAN M. CHEHARDY, CLARENCE E. McMANUS and JAMES C. GULOTTA, Pro Tempore.
*1287 McMANUS, Judge.
This matter is an appeal from the granting of a summary judgment in favor of Appellees and dismissing Appellant's suit. We agree with the trial judge's ruling that Appellant, an unsuccessful bidder on a public works contract, has not demonstrated the conditions necessary to maintain a cause of action for damages against Appellee, and we therefore affirm the judgment.

STATEMENT OF THE CASE
On July 22, 1999, Appellant, D & O Contractors, Inc., filed a Petition for Writ of Mandamus and Damages against Appellees St. Charles Parish, the St. Charles Parish Council, through its chairman, Terry Authement, and Chris Tregre, in his official capacity as president of St. Charles Parish. On August 4 the Parish, the council, and Tregre filed a Dilatory Exception of Improper Use of Summary Proceedings, arguing that because D & O's opportunity to forestall the council's approval of another bid on the project in question had been forfeited as of the date on which the contract had been awarded, their only remaining promise of relief lay in ordinary proceedings. On August 6, Magnolia Construction Company, Inc., the successful bidder, was granted leave to intervene in the proceedings against the Parish.
The exception was heard August 9, 1999; judgment sustaining the exception was rendered on that date. Judgment was signed September 1: the signed judgment specifically denied the writ of mandamus; the judgment also gave D & O fifteen days in which to remove from its petition the request to proceed by summary proceedings.
On August 9 D & O filed a First Supplemental and Amending Petition, and in this pleading, explained why they had not filed a timely injunction to prevent the parish from awarding the contract to Magnolia: D & O alleged that they had been unable to timely file an injunction in advance of the council meeting during which the contract had been awarded to Magnolia because they had expected to be awarded the contract at this same meeting. A second supplemental petition was filed September 1, 1999, converting the matter into an ordinary proceeding. The second supplemental petition also included the claim that LSA-R.S. 38:2220B is unconstitutional because, under the facts of this case, there had not been enough time for D & O to seek injunctive relief before the contract was awarded to Magnolia.
On September 30, the Parish, the council, and Tregre filed a Motion for Summary Judgment, alleging that there were no unresolved issues of material fact requiring trial of the matter. The summary judgment was heard November 18, 1999; the judgment was signed January 31, 2000: the judgment rejected D & O's request for permission to file a third amending petition and dismissed "all claims" of D & O. D & O's third amending petition included a claim for injunctive relief.
In his reasons for judgment, the trial judge noted specifically that "since plaintiffs suit will be dismissed as a result of the granting of the Motion for Summary Judgment, plaintiffs arguments on the alleged unconstitutional actions of defendants and preclusion of summary proceedings by this Court will not be addressed herein."
D & O now presents the following assignments of error:
1. Whether D & O's efforts to seek relief were timely under La.R.S. 38:2220;
2. Whether the July 6 award of the contract to Magnolia was illegal in violation of the Home Rule Charter;
3. Assuming that the trial court correctly applied La.R.S. 38:2220 to the facts of the case, whether La.R.S. 38:2220 is constitutional as applied;
4. Whether the trial court acted properly in dismissing D & O's claim against the parish and its insurer for *1288 ultra vires acts by the parish president.

FACTS
The record contains the following facts surrounding D & O's bid for the contract in question and their attempts to prevent St. Charles Parish from awarding the job to another contractor.
This suit arises out of the bidding process to award St. Charles Parish project No. S-980105, construction of the Montz and Norco Pump Stations and Force Mains, called for as part of the St. Charles Parish Wastewater Regionalization Program. The bids were opened on May 28, 1999, and the Bid Tabulation form, prepared by the project engineer, Camp Dresser & McKee Inc., shows Magnolia Construction's as the lowest bid, with D & O as the next lowest bidder.
The record contains a copy of a letter, dated May 28, from D & O to the St. Charles Parish Council and the parish president, care of Camp Dresser & McKee, in which D & O "formally" protested awarding of the contract to Magnolia, noting that Magnolia's bid package lacked some forms pertaining to the hiring of minority and female-owned sub-contractors.[1] A letter from D & O, dated June 7, again addressed to the Parish and the project engineer, stated that D & O regretted hearing of "[the Parish's] intention to attempt to award" the project to Magnolia and their willingness to "waive" the irregularities in Magnolia's bid.
A letter from Camp Dresser & McKee Inc., dated June 9, and addressed to Richard P. Wright, the Director of the Department of Public Works/Wastewater for the parish, informed other parish officials that while Magnolia had turned in the lowest bid, the bid package was incomplete.
A letter of June 11 to Rick Wright from the parish attorney, Randy O. Lewis, informed Mr. Wright that the defects in the Magnolia bid were waivable, and asked that Mr. Wright award the contract to Magnolia, the lowest bidder for the job. This letter was copied to D & O, and they do not deny that they received their copy.
At the hearing on the Parish's exceptions, the parties entered into stipulations to the effect that the ordinance to approve the Magnolia bid had been introduced at a council meeting held June 7.
The parties also stipulated that Magnolia's bid had been on the agenda for approval at the June 21 meeting, and that the public hearing required for the ordinance's passing had been held on this date. The video of the meeting[2] shows that Magnolia's bid was discussed extensively. An attorney representing D & O was present at the meeting; D & O's objections to Magnolia's bid were again voiced. The parish attorney advised the council that the irregularities in Magnolia's bid were waivable; Magnolia's president informed the council that the omission did not actually constitute a flaw in the bid, that the forms in question are not due until after a bid has been accepted. In the end, as some council members continued to express concern about problems with Magnolia's bid package, the bid was withdrawn from consideration by the council. In addition, sometime during this meeting, Councilman Johnson moved to add consideration of D & O's bid to the agenda of the next council meeting.[3]
The record does contain the Meeting Agenda for the parish council meeting to be held July 6, 1999. Listed on the agenda, *1289 as one of the Ordinances Scheduled for Public Hearing (Introduced at Previous Meeting), is an ordinance to approve and authorize the execution of a contract with D & O Contractors, Inc., for the construction of the Montz and Norco Pump Stations and Force Mains Project in the amount of $4,227,431.00.
A supplemental agenda for a meeting scheduled for August 2 includes among the Ordinances and Resolutions to be Introduced for Publication & Public Hearing an ordinance to approve and authorize the execution of a contract with Magnolia Construction Co., Inc., for the construction of the Montz and Norco Pump Stations and Force Mains Project in the amount of $4,150,992.00.
The record also contains a video of the parish council meeting held July 6, 1999. At this meeting, the council voted to reconsider the vote that had removed Magnolia's bid from consideration; after the ordinance was returned to the table for consideration, the ordinance itself was again taken up for a vote. As shown in the video and the official minutes of this meeting, Magnolia's bid was approved, and the ordinance under which the contract was awarded was passed. During this meeting, D & O's bid was removed from the agenda. In addition, Councilman Johnson, who had introduced the ordinance to approve D & O's bid, stated that he had introduced the ordinance simply to save time getting the project started in the event that Magnolia's bid had been ultimately rejected.
Newspapers published on July 10, 14 and 21 include, among the public notices, an agenda for the parish council meeting of August 2, which includes the ordinance to approve Magnolia's bid.[4]
The record contains several affidavits executed by individuals involved in the process of bid offering and acceptance. Louis Authement testified by way of his affidavit that he had represented D & O during the initial phases of their bid presentation. Authement stated that he had attended the June meeting of the parish council during which Magnolia's bid had been discussed and removed from consideration. He also testified that he had attended the July meeting during which the council had, in what he describes as a "highly irregular and surprising parliamentary maneuver," reconsidered, and approved, Magnolia's bid. Authement stated that it had been these events that prevented D & O from filing for injunctive relief before the contract was awarded to Magnolia.
Dan Wagner, the vice president of D & O, stated in his affidavit that D & O had been "led to believe" that the Parish intended to give D & O the contract during the July council meeting.
Chris Tregre, president of St. Charles Parish, testified in his affidavit that D & O's representative had been present at the council meetings held on June 7 and June 21, the meetings at which the parish council had discussed the project in question and considered the bids offered for the job.
The contract between Magnolia and St. Charles Parish was signed on July 30, 1999; work on the project commenced on August 5, 1999.

ASSIGNMENT OF ERROR NUMBER ONE
As their first assignment of error, D & O argues that the trial judge was in error in granting summary judgment in favor of St. Charles Parish. While D & O acknowledges the authority under which an unsuccessful bidder waives the right to damages by failing to seek injunctive relief prior to the contract's having been awarded, they argue that their "effort to seek relief"[5] *1290 was timely. However, we can't agree with D & O assertions that they were "prevented" from timely filing suit by the council's "misleading" actions. The trial judge was correct to have dismissed D & O's suit.
We first must recognize that summary judgments are reviewed on appeal de novo. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, at 26 (La.7/5/94), 639 So.2d 730, 751; Prince v. K-Mart Corp., 99-253 (La.App. 5 Cir. 8/31/99), 742 So.2d 718. A motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Prince, 99-253 at 3, 742 So.2d at 720.
Because the contract in question was for the construction of a public facility, the contract is controlled by the statutes outlining acceptance of contractors' bids. See LSA-R.S. 38:2212 and sections following. Because the contract in question has a public body as a principal, the contract is null unless the contracting parties have complied with established procedure even if the contract is awarded to the lowest bidder. As set out in LSA-R.S. 38:2220:
A. Any purchase of materials or supplies, or any contract entered into for the construction of public works, contrary to the provisions of this Part shall be null and void.
B. The district attorney in whose district a violation of this Part occurs, the attorney general, or any interested party may bring suit in the district court through summary proceeding to enjoin the award of a contract or to seek other appropriate injunctive relief to prevent the award of a contract which would be in violation of this Part, or through ordinary proceeding to seek appropriate remedy to nullify a contract entered into in violation of this Part.
Further, there is no question that an unsuccessful bidder may also seek damages once a contract is awarded pursuant to a defective bid. Airline Const. Co., Inc. v. Ascension Parish School Bd., 568 So.2d 1029 (La.1990). However, just as the public entity is bound by established regulations, so is the unsuccessful bidder bound to comply with all procedures regulating the availability of "post deprivation" remedies. And these procedures predicate the availability of damages for the lost contract on the unsuccessful bidder's having timely sought to prevent the public body from awarding the contract to a rival bidder:
[A]n unsuccessful bidder on a public contract who fails to resort to the relief granted by statute by attempting to enjoin timely the execution or the performance of the contract, when the facts necessary for injunctive relief are known or readily ascertainable by the bidder, is precluded from recovering damages against the public body.

. . . .
If an aggrieved bidder does not timely file a suit for injunction, he has waived any right he may have to claim damages against the public body or the successful bidder.
. . . .
The timeliness of a suit for injunction depends on the facts and circumstances of the particular case, including, among other things, the knowledge possessed by the attacking bidder concerning the wrongful award of the contract, the point in time the bidder acquired this knowledge, the point in time that the public body became indebted to the successful bidder, and the time period between *1291 the awarding of the illegal contract and the completion of construction.
Airline Const. Co. Inc., 568 So.2d at 1033, 1035 (emphasis added).
LSA-R.S. 38:2220B permits an ordinary proceeding (for damages) to be brought, but only when an injunction is impossible for good cause stated by plaintiff. Otherwise any claim for damage that the unsuccessful bidder might have will be considered waived. MBA Medical, Inc. v. Jefferson Parish Hosp. Service, 97-997, at 7 (La.App. 5 Cir. 1/27/98), 707 So.2d 467, 470 (emphasis added).
The facts particular to this case are as follows. There is no question that D & O knew as of the date the bids were openedMay 28that Magnolia had submitted the lowest bid and that the bid was possibly defective, thus potentially unacceptable. D & O, in two letters to the Parish, each dated in early June, "protested" the Parish's probable awarding of the contract to Magnolia. In addition, a letter from the St. Charles Parish attorney, copied to D & O and also dated in early June, informed the director of public works for the Parish that any defects in Magnolia's bid could be waived. Representatives of D & O attended the early June parish council meeting during which the ordinance to approve Magnolia's bid was introduced and set for approval at the June 21 meeting.
There is no question, therefore, that D & O knew that the Magnolia bid would probably be approved as of June 21, and they have offered no explanation of why they did not seek injunctive relief before this date. The June 21 council meeting was held almost one month after D & O had knowledge that a possibly defective bid would probably be accepted.
Nor can we accept D & O's assertions that they were "led to believe" the council intended to award them the contract at the meeting of July 6. Having reviewed the entire record, including the videos of the two meetings, we cannot say that Magnolia's bid had been decisively disqualified at the June 21 meeting. As noted by D & O, Magnolia's bid had been placed on an August agenda. In addition, the council had been advised by the parish attorney that any possible defects in Magnolia's bid would be waivable, and there were several members of the council in favor of Magnolia's bidpossible defects notwithstanding throughout the June 21 meeting. The Parish's director of public works continued to support Magnolia's bid during the meeting. We must remain conscious that the council was bound by statute to accept the lowest bid. LSA-R.S. 38:2212. Nor can we ignore Councilman Johnson's statement, made at the July 6 meeting, to the effect that D & O's bid had placed on the agenda simply as a timesaving step in the event that Magnolia's bid was ultimately rejected. D & O's assertions, therefore that they were led to believe the council was obligated to accept their bid at the July meetingare without support in the record. And any such belief, if genuine, was not reasonable.
Also unavailing are D & O's statements that they were prevented from having timely acted by advertisements, placed in newspapers of July 10, 14 and 21, placing Magnolia's bid on the agenda for an early August council meeting. There was no question that the contract was awarded to Magnolia at the July 6 meeting; there is no question that representatives of D & O had been present at this meeting. These notices, obviously simply inadvertent, cannot serve as an excuse for their failure to have taken appropriate action.
Finally, we distinguish the facts of this case from those presented in B.F. Carvin Const. Co., Inc. v. Jefferson Parish Council, 98-1189 (La.App. 5 Cir. 5/19/99), 735 So.2d 859, cited to us by D & O. In the Carvin case, the availability of a hearing by the Bid Disqualification Review Committee, provided under parish regulations (see Jefferson Parish Code of Ordinances § 2-863 and following sections), had the effect of creating an intermediate step in the bid acceptance process. Therefore, in the Carvin case, we held that the parish could not award a contract at a disqualification hearing"instantaneously"without *1292 allowing the interested parties some reasonable delay in which to file suit to enjoin the parish from accepting a defective bid. Carvin, 98-1189 at 6, 735 So.2d at 862-3.
We have reviewed the record de novo, and we find no circumstances that would have "prevented" D & O from having filed for injunctive reliefor any relief throughout the entire period from May 28 through July 6, the date on which the parish council awarded the contract in question. They have not shown that timely action was "impossible." MBA Medical, 97-997 at 7, 707 So.2d at 470. D & O's claim for damages was forfeited as of July 6, 1999.
The trial judge was correct to have granted the summary judgment in favor of Magnolia, dismissing D & O's claim for damages against St. Charles Parish.

ASSIGNMENTS OF ERROR TWO THROUGH FOUR
As their final three assignments of error, D & O alleges violations of the rules governing meetings of the St. Charles parish council. In addition, they assert that LSA-R.S. 38:2220 is unconstitutional "as applied."
The record below does not contain a ruling on any of these claims. Nor can we assume that they were impliedly rejected: the reasons for judgment indicate that the trial judge did not address any of these remaining claims intentionally. Therefore, there is nothing for us to review. See LSA-C.C.P. art. 2082.
For the above reasons, therefore, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] The forms are required to show compliance with hiring practice regulations established by the Louisiana Department of Environmental Quality under guidelines from the federal Environmental Protection Agency.
[2] The video tape is incorrectly labeled "July 21, 1999."
[3] The video submitted shows only part of the meeting, and the motion to put D & O's bid on the agenda for the July 6 meeting is not on the tape.
[4] The newspapers were filed pursuant to a motion in our court. The ordinance is listed in these exhibits as "summary 4760," which, as was explained at the July 6 meeting, was a duplicate of "summary 4746," the designation under which the ordinance had been passed.
[5] Because the issue is not raised here, and because D & O's suit was plainly untimely, we need not decide whether a mandamus (as opposed to an injunction) is an available prophylactic under LSA-R.S. 38:2220.