| PATRICIA RIVET MURRAY, Judge.
This is a declaratory judgment action. The plaintiffs, Ventana Property Management, Inc., and Scottsdale Insurance Company, appeal the trial court judgment denying declaratory relief. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

This case stems from a contractual relationship that existed between Ventana’s corporate predecessor, C.J. Brown Property Management, Inc., and the Housing Authority of New Orleans (HANO) from July 1991 to September 1994. The contract between C.J. Brown and HANO was entered into on July 1, 1991, and renewed on two occasions (September 18, 1992, and September 28, 1993). Under the contract, C.J. Brown agreed, among other things, to “provide all necessary services as the agent for the general supervision over the administration of HANO’s business affairs and management of its housing developments” and to “manag[e] HANO on a day-to-day basis.”
Another significant aspect of the contract was an incentive provision that allowed C.J. Brown to earn additional amounts for reducing the number of claims filed by HANO residents; particularly, this provision was based on an “accident/lead based paint poisoning prevention program” to be undertaken with | ¡¿he residents.[1] Yet another relevant part of the contract was the requirement that C.J. Brown procure commercial or comprehensive general liability insurance and name HANO as an additional insured; such insurance purportedly was obtained with Scottsdale.[2] Finally, the contract includes the following indemnification provision:
The Contractor [C.J. Brown] shall indemnify and hold the Board [HANO] harmless from any loss, damage, liability, or expense on the account of damage to property and injuries, including death, to all persons, including employees of the Contractor or any subcontractors, and to all other persons performing any part of the work, which may arise from any omissions or negligence on the part of the Contractor or any breach of his obligations under this contract.
During the existence of the contractual relationship between C.J. Brown and HANO, numerous individuals allegedly sustained various personal injuries as a result of alleged defective conditions at the *326 various HANO housing developments. These individuals filed suit against HANO. According to the petition, beginning in August 1996, HANO implemented the practice of impleading C.J. Brown, Ventana, and Scottsdale, or a combination of one or more of those entities, as third party defendants in these personal injury suits that arose from accidents occurring during the contractual relationship. Likewise, some of these individual plaintiffs, following HANO’s practice, began filing supplemental and amending petitions to directly name those same entities as defendants based on the same theory of liability as HANO alleged in the third party petitions.
HANO’s theory of liability is that under selected provisions of the contract those entities should be held liable for C.J. Brown’s “assuming] control and/or [¡¡responsibility for inspections, tenant complaints, maintenance and repairs at the various HANO housing developments during the term of the C.J. Brown/HANO contract.” The petition alleges that these types of claims have been asserted against these entities either directly or by third party demand in some “seventy plus” lawsuits.[3] Illustrative of the third party demands HANO has filed is the following:
“The alleged accident and injuries of the plaintiff ... were caused solely by the acts of fault and negligence on the part of the third-party defendants C.J. Brown Company in the following but not exclusive respects:
A) Failing to honor the property management contract between HANO and C.J. Brown Company;
B) Failing to answer any alleged work request proven at trial by the original plaintiff;
C)Such other acts and omissions as will be proven at trial.”
Based on these allegations, HANO avers that the third-party defendants should be liable in its place or, in the alternative, that it is entitled to indemnity or contribution from C.J. Brown; its corporate successor, Ventana; and its insurer, Scottsdale, for any amounts for which HANO is found liable to the original plaintiffs.
Attempting to consolidate the issue of their liability into a single judicial forum and to have that forum absolve them from all liability in these pending actions, Venta-na and Scottsdale filed the instant declaratory judgment action in February 1998. Named as defendants in this action are HANO and several individuals. The individuals are the various plaintiffs who, by supplemental or |4amending petition, directly named C.J. Brown, Ventana, and Scottsdale as defendants in their pending actions.
In the present case, plaintiffs requested a judgment declaring the following:
[Plaintiffs] are not liable pursuant to the C.J. Brown Property Management, Inc./Housing Authority of New Orleans contract for any damages allegedly incurred as a result of allegedly defective conditions at the various HANO housing developments during the July 1, 1991 through September 30,1994 term of said C.J. Brown/HANO contractual relationship and barring said defendants from making or proceeding with any claims against petitioners for alleged liability arising out of damages allegedly incurred as a result of allegedly defective conditions at the various HANO housing developments during the July 1, 1991 through September 30,1994 term of said *327 C.J. Brown/HANO contractual relationship.
Plaintiffs seek declaratory relief barring such liability claims based on the doctrines of equitable estoppel, breach of contract, or both. Plaintiffs’ theory is that C.J. Brown justifiably relied on HANO’s actions during the term of the contractual relationship. Plaintiffs contend that the evidence established that HANO in actuality maintained control over complaints, inspections, and maintenance. Plaintiffs further contend that HANO should not be permitted to rely on the terms of the contract given that the actual working relationship between the parties differed drastically from the contract. Hence, plaintiffs seek a declaratory judgment barring defendants from asserting such claims against them.
In May 2000, the trial court rendered a judgment denying “the Motion for Declaratory Judgment declaring that the Housing Authority of New Orleans is an insured under the Scottsdale Insurance Police issued to CJ Brown.” The parties then filed a motion for new trial on the basis that the original judgment did not address the issues plaintiffs brought this action to resolve, and the trial court granted that motion.
I.Jn March 2001, the trial court denied plaintiffs’ motion for summary judgment, reciting the following reasons:
It is implicit throughout this contract that Ventana’s predecessor was vested with all of the responsibilities for maintaining the housing developments. It is evident from the contract, that HANO’s purpose for contracting with Ventana was to share the burden of managing and maintaining one of the many public housing units in the City. Further, it [sic] apparent from the contract that Ventana would earn in excess of $2.9 million dollars as a result of their management of the property. If this Court is persuaded by the doctrine of equity, it would be to prevent Ventana from reaping the financial benefits of their contractual arrangements with HANO without exposure for their liability as a result of their alleged negligent management.
Thereafter, the matter was tried and judgment was rendered denying the declaratory relief requested for the same reasons recited in denying the earlier motion for summary judgment. In its judgment, the trial court expressly held that plaintiffs’ liability, if any, arising out of allegedly defective conditions at HANO’s housing developments during the term of the contractual relationship “shall be determined on a case-by-case basis by the facts established in each such particular case.” This appeal followed.
DISCUSSION
Plaintiffs assign as error the trial court’s failure to grant either their motion for summary judgment or their request for declaratory relief. As to the latter, plaintiffs allege that the trial court committed reversible error in failing to grant a declaratory judgment holding: “that — because of HANO’s own actions during the term of its contractual relationship with C.J. Brown — HANO and the various individual plaintiffs in the seventy-plus lawsuits in question should be barred from now going back and attempting to assert that Ventana/C.J. Brown, rather than HANO, should be liable for alleged injuries purportedly sustained as a result of | (¡allegedly defective conditions at HANO’s housing developments during the term of the HANO/C.J. Brown contractual relationship.”
Defendants counter that the trial court did not abuse its discretion in refusing to grant declaratory relief. Defendants fur *328 ther argue that the trial court’s discretionary decision to deny plaintiffs exoneration from tort and contract claims should therefore be affirmed.
A trial court has “wide discretion in deciding whether to grant or refuse declaratory relief.” Louisiana Supreme Court Comm. on Bar Admissions ex. rel. Webb v. Roberts, 2000-2517, p. 3 (La.2/21/01), 779 So.2d 726, 728. “[A]ppellate courts should not reverse unless there is an abuse of discretion.” Ricard v. State, 544 So.2d 1310, 1312 (La.App. 4th Cir.1989).
The scope of declaratory relief is governed by La. C.C.P. art. 1871, which provides:
Courts of record within their respective jurisdictions may declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for; and the existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate. The declaration shall have the force and effect of a final judgment or decree.
La. C.C.P. art. 1871 (emphasis added). The underscored restrictive language evidences the legislature’s intent that declaratory relief not apply “to every class of action known to our law.” Vignes v. Jarreau, 222 So.2d 566, 568 (La.App. 1st Cir.1969)(holding declaratory relief unavailable in boundary actions).
One type of action that historically was one of the earliest in which a declaratory judgment was used is one construing a contract. Judge Steven R. Plot-kin, Louisiana Civil Procedure 229 (1994). Indeed, “[a] contract may be |7construed either before or after there has been a breach thereof.” La. C.C.P. art. 1873. And, the declaratory judgment provisions “are to be liberally construed and administered.” La. C.C.P. art. 1881. These provisions, however, are tempered by the fundamental requirement that to obtain declaratory relief to construe a contract a justiciable controversy must exist. Translated, this means that “the party seeking the declaratory judgment must establish that adverse legal interests are involved.” Plotkin, supra.
In this context, a “justiciable controversy” connotes “an existing actual and substantial dispute, as distinguished from one that is merely hypothetical or abstract, and a dispute which involves the legal relations of the parties who have real adverse interests, and upon which the judgment of the court may effectively operate through a decree of conclusive character.” Abbott v. Parker, 259 La. 279, 308, 249 So.2d 908, 918 (1971). This concept is designed to prevent courts from issuing “advisory opinions based on a contingency which may or may not occur.” Louisiana Supreme Court Comm. on Bar Admissions, 00-2517 at p. 3, 779 So.2d at 728 (citing Couvillion v. James Pest Control, Inc., 98-2382 (La.App. 4th Cir.3/3/99), 729 So.2d 172, 174).
In Couvillion, supra, declaratory relief was sought regarding the enforceability of a hold harmless provision that was part of an asset acquisition agreement. Under that provision, the purchaser agreed to hold the seller of a termite inspection business harmless for ongoing termite service contracts. A customer who originally contracted with the seller but entered into a renewal agreement with the purchaser sued both of them for termite infestation damages. Based on the hold harmless provision, the seller sought declaratory relief against the purchaser. Construing the contract and granting that relief, the trial court | «declared that the purchaser agreed *329 to hold the seller harmless. Reversing, we held that there was no justiciable controversy at the time the seller sought declaratory relief. We noted that the issue of whether either the seller or the purchaser was liable to the plaintiff had not been resolved and thus reasoned:
If it were found that neither defendant is hable in the instant case, there would be no need to determine if Couhig [the purchaser] must hold harmless James [the seller]. Since there is a contingency involved, it is impossible to state with certainty that the hold harmless clause in the asset acquisition clause will definitely be triggered.
729 So.2d at 175. Hence, we held that declaratory relief was inappropriate because if neither defendant were found liable, the hold harmless issue would become moot.
We reached the same result under similar facts in Faucheaux v. Prytania Medical Complex Owners Ass’n, 93-2042, 94-0159 (La.App. 4 Cir. 8/17/94), 642 So.2d 242. In that case, the parking garage owner and the lessee of the garage were both named as defendants in two separate suits involving slip-and-falls in the garage. The garage owner filed a motion for summary judgment, or alternatively, declaratory judgment seeking a determination that under the lease agreement the lessee obligated itself to indemnify the garage owner for all damages arising out of operating the parking garage. Revering the judgments of the trial courts in the property owner’s favor, we reasoned that given the lack of a justiciable controversy the trial courts’ decision was premature. Particularly, we stated:
[T]he extent of those [indemnification] responsibilities cannot be decided until the main demands are tried and resolved. If the plaintiffs lose, there may be no indemnification required. If plaintiffs are successful, the legal and factual basis of their recovery may weigh heavily on whether the indemnification provisions are applicable.
| fl93-2042 at p. 4, 642 So.2d at 244-45. We further noted that “any decision rendered by this Court at this time would be premature and perhaps an advisory opinion, which we are not permitted to render.” 93-2042 at p. 4, 642 So.2d at 245.
As in Faucheaux and Couvillion, the instant ease involves a contingency that renders declaratory relief procedurally inappropriate. The relief plaintiffs seek will necessarily be decided in the pending, individual tort suits. If neither HANO nor C.J. Brown were found at fault in those pending suits, the issues in this case would become moot. We thus hold that the trial court did not abuse its discretion in denying plaintiffs’ request for declaratory relief.
For the foregoing reasons, the judgment of the trial court is affirmed at appellant’s costs.
AFFIRMED.

. It is not disputed that this case does not involve the hundreds of pending claims arising from lead-based paint in the HANO housing developments.

. This requirement was the focus of the trial court’s original judgment in this matter, which addressed the failure to name HANO as a named insured and held declaratory relief on that issue unavailable. Given that both sides agreed the trial court’s focus was misplaced, the trial court granted their motion for new trial.

. In arguments before this court, the parties represented that the number of pending suits has dwindled.