ROGERS, Justice.
 

 Plaintiffs suit against the United Carbon Company was dismissed on an exception of no right or cause of action, and plaintiff has appealed from the judgment.
 

 The suit was against the Carson Carbon Company and the United Carbon Company for money advanced to the Carson Carbon Company and for an accounting for the value of certain stock owned by the plaintiff company in the Carson Carbon Company.
 

 The facts alleged in the petition are as follows:
 

 • In February, 1923, the Ault & Wiborg Company of Canada and the Ault & Wiborg Company of Ohio, which were engaged in the manufacture of printing inks, organized under the laws of Ohio another corporation known as the Carson Carbon Company, each of the incorporating companies owning 50 per cent, of the capital stock in the new corporation.
 

 In order to provide the funds with which to pur-chase land in Morehouse parish, in this state, and to erect and operate a plant thereon for the manufacture of carbon black, a material used in the manufacture of printing inks, the two Ault & Wiborg companies advanced from time to time equal amounts of money to the Carson Carbon Company. On June 30, 1930, the Carson Carbon Company owed $49,194.23 to each of its creditors for such advances.
 

 In May, 1928, the Ault & Wiborg Company of Ohio sold its one-half interest in the Carson Carbon Company to the International Printing Ink Corporation; and in July, 1930, the latter corporation sold the one-half interest which it had acquired in the Carson Carbon Company to the United Carbon Company. The selection of the officers and directors and the control and management of the Carson Carbon Company was first in the Ault & Wiborg Company of Ohio, then in the International Printing Ink Corporation, and later in the United Carbon Company. The Ault & Wiborg Company of Canada never exercised any supervision over the Carson Carbon Company, nor took any part in the management of its business.
 

 On October 19, 1928, the Carson Carbon Company entered into a contract with Moody & Seagraves to purchase 2,500,000 cubic feet of gas per day at 3 cents per 1,000 cubic feet. And in December, 1929, the Carson Carbon Company entered into a contract with the United Carbon Company by which the United Carbon Company agreed to deliver to the Carson Carbon Company a maximum of 2,500,000 feet of gas per day at 2% cents per 1,000 feet. In June 1930, the Carson Carbon Company secured a modification of its contract with Moody & Seagraves, whereby the quantity of gas called for thereon was reduced to 1,000,000 cubic feet per day.
 

 Immediately after July 1, 1930, and until July 31, 1931, the Carson Carbon Company used more than 2,500,000 cubic feet of gas per day from the wells of the United Carbon Company, and not more than 1,000,000 cubic feet of gas per day from the wells of Moody & Seagraves. In payment for the gas
 
 *686
 
 which it sold, the United Carbon Company accepted the entire output of carbon black, valued at more than $27,000, of the Carson Carbon Company. On July 18, 1031, the Carson Carbon Company became insolvent and closed its plant.
 

 In August, 1931, the United Gas Public Service Company (the successor to Moody & Seagraves) sued the Carson Carbon Company for breach of contract, and by way of compromise obtained a judgment for $1,862.82. This judgment was subsequently assigned for its face value to the United Carbon Company.
 

 Plaintiff alleges that the sale of its interest in the Carson Carbon Company by the Ault & Wiborg Company of Ohio to the International Printing Ink Corporation, and the sale by the latter company of the interest thus acquired to the United Carbon Company, were made without its knowledge or consent. That as a part of the agreement of the •sale by the International Printing Ink Corporation to the United Carbon Company, the International Printing Ink Corporation, -which at the time was the only customer for its entire output of the Carson Carbon Com; •pany, agreed to purchase all the carbon black required for its needs from the United Carbon Company, which agreement was entered into in violation of plaintiff’s rights and with the intent to injure and defraud plaintiff.
 

 The substantial grounds of plaintiff’s action appear to be set forth in article 15 of the petition, reading as follows, viz.:
 

 “As the result of the actions of said The Carson Carbon Company, hereinbefore stated, all of which were entered into and carried on by collusion and conspiracy with said The United Carbon Company, in deceiving said .Moody & Seagraves, and/or its successor, as to the terms and status of the alleged contract between the said The Carson Carbon Company and said The United Carbon Company, and in breaching and failing to perform the said contract between said The Carson Carbon Company and Moody & Seagraves, and in closing down its said plant after having purchased gas from said The United Carbon Company, in violation of the rights of said Moody & Seagraves, and/or The United Gas Public Service Company as its successor, and in so making payment for gas purchased from said The United Carbon Company, by turning over to it its entire output of carbon black, which was accepted by said The United Carbon Company with full knowledge of the facts herein stated regarding the contract of said The Carson Carbon Company with Moody & Seagraves; said The Carson Carbon Company, which on June 30, 1930, had net current assets in excess of $23,000.00 and a surplus account of $2,700.00, on July 31, 1931 had reduced its net current assets to approximately $3,000.00, and its surplus account to a deficit in excess of $44,000.00, or a net loss in excess of $67,000.00; and said The United Carbon Company had received from said The Carson Carbon Company in carbon black, being the entire output of the Carson Carbon Company for said period, more than $27,000.00; with the result that said The United Carbon Company' suffered no loss by reason of its ownership of half the stock of said The Carson Carbon Company, but, on the contrary, realized a profit in excess of $4,000.00, whereas petitioner, being the other half owner of the stock of said The Carson Carbon Company, suffered a loss equivalent
 
 *688
 
 to the value of one-half the property and assets of said The Carson Carbon Company, plus its said obligation in the sum of $49,-194.23.”
 

 And in article 18 of its petition, plaintiff sums up its complaint against the defendants as follows, viz.: ‘‘Said the Carson Carbon Company on June 30, 1930, and prior thereto, was a solvent operating concern which would have, as petitioner believes, been able to pay off in full its obligations in the sum of $49,194.23 to both said the United Carbon Company and to petitioner, and its capital stock had and would have had a substantial value in an amount which petitioner is unable to state. The result, intended and effected, of the acts of said the Carson Carbon Company as a corporation, its officers, agents and employees acting in its behalf, and of said the United Carbon Company, is to render said debts of said the Carson Carbon Company to petitioner uncollectible and worthless, and to deprive said stock of said the Carson Company owned by petitioner of any value whatever.”
 

 The petition discloses that the suit is by one stockholder against the other stockholder of a corporation for injuries suffered by the corporation itself from the alleged wrongdoing or negligence of its officers, who were influenced or controlled by the defendant stockholder. It is questionable whether such an action will lie. Whether if there is any liability on the part of the United Carbon Company, that liability should not be enforced in an action for the benefit of the Carson Carbon Company and not in a suit the object of which is to enforce the individual rights of a stockholder and creditor. But, be that as it may, we think plaintiff’s petition fails to state a cause of action against the United Carbon Company.
 

 Plaintiff’s argument that the agreement originally entered into between plaintiff and the Ault & Wiborg Company of Ohio constituted a joint adventure and is governed by the rules applicable to joint adventures is wholly inconsistent with the allegations of the petition.
 

 The legal relation of joint adventure now widely recognized in judicial decisions results from the undertaking by two or more persons to combine their property or labor in the conduct of a particular line of trade or general business, for joint profits, creating the status of a partnership, although the facts do not show a formal partnership. While a joint adventure is not identical with a partnership, it is analogous to a partnership and is controlled largely by the principles or rules applicable to partnerships. But there is no joint adventure where an actual partnership exists or where the business or enterprise is organized and operated in corporate form. See annotations to Keiswetter v. Rubenstein, 48 A. L. R. 1055 et seq., and Bond v. O’Donnell, 63 A. L. R. 909 et seq.
 

 The Carson Carbon Company was neither a partnership nor a joint adventure. It was a corporation organized under the laws of Ohio by plaintiff and the Ault & Wiborg Company of Ohio, each of the incorporating companies owning 50 per cent, of its original stock. This clearly appears from the express allegations of the petition itself. Hence, the extensive argument submitted by plaintiff as to the respective rights and liabilities of co-
 
 *690
 
 adventurers is not appropriate to the issue presently before us.
 

 An analysis of the petition shows that plaintiff is seeking to enforce its demand against the United Carbon Company on three grounds, viz.: Because of its purchase from the International Printing Ink Corporation of that corporation’s interest in the Carson Carbon Company; the alleged misrepresentations made to Moody & Seagraves by the officers, directors, and agents of the Carson Carbon Company while that company was under the control and management of the International Printing Ink Corporation; and the acceptance by the United Carbon Company of $27,000 worth of carbon black from the Carson Carbon Company.
 

 If it be true, as alleged generally in article 15 of the petition, that on June 30, 1930, the Carson Carbon Company was possessed of current assets in excess of $23,000 and a surplus account of $2,700, it is equally true that on that date the Carson Carbon Company owed $49,194.23 to each the plaintiff and the International Printing Ink Corporation (as the successor of the Ault & Wiborg Company of Ohio). It is not shown that the alleged assets were sound or that the alleged surplus was real. Nor is it shown that the alleged shrinkage of $3,000 in the assets and the alleged deficit of $44,000 in the surplus were due to the fraud or fault of the United Carbon Company. It might well be that the alleged shrinkage in assets and deficit in surplus were the result of the prevailing economic depression. The figures set forth in the petition apparently do not support the allegation that the United Carbon Company realized a profit in excess of $4,000. The implication of article 18 of the petition clearly is that while the plaintiff was not repaid the $49,194.23 which it had advanced to the Carson Carbon Company, neither was the United Carbon Company repaid the $49,194.23 which had been advanced by the Ault & Wiborg Company of Ohio to the Carson Carbon Company, which debt it acquired by virtue of its purchase of the interest of the International Printing Ink Corporation in the Carson Carbon Company. And it would appear to be certain that if, as alleged in the petition, the United Carbon Company paid the International Printing Ink Corporation $50,000 for its interest in the Carson Carbon Company, as the owner of 50 per cent, of its stock, it suffered a loss rather than realized a profit from the operations of the Carson Carbon Company.
 

 If the purpose of the United Carbon Company in purchasing the interest of the International Printing Ink Corporation in the Carson Carbon Company was to obtain for itself the business of its vendor, which was the sole customer of the Carson Carbon Company, we fail to find anything fraudulent in the transaction. Certainly, the petition fails to disclose any injury to plaintiff resulting therefrom. Although plaintiff, as the owner of a one-half interest, had the power to restrain the actions of the United Carbon Company, if they were unsatisfactory, and to demand a share in the management of the Carson Carbon Company, it permitted the United Carbon Company, apparently without complaint to manage the Carson Carbon Company for a period of thirteen months. The petition affirmatively shows that after the sale by the International Printing Ink Corporation to the United Carbon Company of its interest in the Carson Carbon Company, there was no mar
 
 *692
 
 gin in the amount of carbon black manufactured by the latter company for supplying the needs of the International Printing Ink Corporation or of any other customer; that the value of the entire output of carbon black of the Carson Carbon Company was not sufficient to pay for the gas purchased by the Carson Carbon Company from the United Carbon Company and from Moody & Seagraves and the United Gas Public Service Company, as their successor; and there is no charge in the petition that the prices at which the carbon black was delivered to the United Carbon Company were unfair or below the market rates.
 

 As to any misrepresentations which may have been made to Moody & Seagraves, whereby a modification of their contract with the Carson Carbon Company was obtained, the petition shows that the alleged misrepresentations were made some time in June, 1930. At that time the Carson Carbon Company ivas under the management of the International Printing Ink Corporation. The United Carbon Company did not acquire its interest in the Carson Carbon Company until July 1, 1930.
 

 Plaintiff’s only attempt to connect the United Carbon Company with the alleged misrepresentations is contained in its vague allegation that the United Carbon Company was advised by the Carson Carbon Company that the Carson Carbon Company had made the alleged misrepresentations to Moody & Sea-graves and/or its successor.
 

 If any injury was suffered as the result of the alleged misrepresentations, the injury was suffered by Moody
 
 &
 
 Seagraves or the United Gas Service Company, as their successor, and not by plaintiff. There is no allegation in the petition that the alleged misrepresentations violated any of plaintiff’s rights. On the contrary, the petition shows that plaintiff, as a stockholder and creditor of the Carson Carbon Company, was apparently benefited by the modification of the contract between the Carson Carbon Company and Moody & Seagraves, since that contract stipulated for a price of 3 cents per 1,000 cubic feet of gas delivered, whereas the contract between the Carson Carbon Company and the United Carbon Company provided for the smaller price of
 
 2%
 
 cents per 1,000 cubic feet of gas delivered.
 

 The petition alleges that the United Carbon Company fraudulently accepted $27,000 worth of carbon black from the Carson Carbon Company. But the petition also shows that the United Carbon Company received the carbon black in payment for gas which it sold to the Carson Carbon Company. The petition alleges that the United Carbon Company, immediately after it acquired an interest in the Carson Carbon Company and until July 31, 1931 (approximately thirteen months), sold to the Carson Carbon Company 2,500,000' cubic feet of gas per day at the price of
 
 2%
 
 cents per 1,000 feet. This was $68.75 worth of gas per day, or a total of $27,156.25 worth of gas for the thirteen months, during which the companies dealt with each other. In return for the $27,156.25 worth of gas delivered to the Carson Carbon Company, the United Carbon Company received from its vendee $27,000 worth of carbon black. No injury resulted to plaintiff from the transaction. During the
 
 *694
 
 same period Moody & Seagraves and their successor delivered to the Carson Carbon Company approximately 1,000,000 cubic feet of gas per day at the price of 3 cents per thousand cubic feet. If the entire output of the plant of the Carson Carbon Company was insufficient to pay for the total amount of gas which it purchased from the United Carbon Company and Moody & Seagraves and their successor, and the United Carbon Company was paid for its gas and Moody & Seagraves and their successor were not paid for their gas, while Moody & Seagraves and their successor might have been injured by the transaction, plaintiff clearly was not. And plaintiff’s petition shows that the United Gas Public Service Company, the successor to Moody
 
 &
 
 Seagraves, sued the Carson Carbon Company for breach of contract and has had its claim satisfied.
 

 Plaintiff is not suing as a minority stockholder who has been deprived of any rights by an unscrupulous majority. Plaintiff is the owner, and has always been the owner, of 50 per cent, of the capital stock of the Carson Company. Plaintiff admits that it never took any interest in the management of the Carson Carbon Company. Plaintiff was satisfied apparently to turn over to the owner of the other 50 per cent, of the capital stock of the Carson Carbon Company the entire management of that company. The United Carbon Company was in charge of the affairs of the Carson Carbon Company for a period of thirteen months. If its management was fraudulent or negligent, the plaintiff took no steps to remedy the situation. It was not until about nine months after the Carson Carbon Company had become insolvent and had closed its plant that plaintiff began to complain.
 

 For the reasons assigned, the judgment appealed from is affirmed at plaintiff’s costs.