SARTAIN, Judge.,
This litigation involves a dispute between two workmen compensation insurance carriers. The facts leading up to the instant controversy are not in serious dispute.
Clover Construction Corporation (Clover), a Louisiana corporation, is engaged in the construction of streets, drainage, grading and generally all of those things necessary to properly develop a residential subdivision. The principal stockholder and president is George E. Reine, III. Clover was desirous of obtaining a contract to construct the site improvements in a subdivision situated in Slidell, St. Tammany Parish, Louisiana, known as Fountain Estates Addition Number 2. To this end it entered into a contract with the owner, Circle “R”, Inc., and the latter’s mortgagee, Carruth Mortgage Corporation. For this work Clover was to receive the sum of $468,750.00. However, in order for Clover to obtain the contract it was necessary that it issue to the owner and its mortgagee a “Performance Bond” in the amount of the contract. Clover did not possess sufficient assets to obtain such a bond. It, therefore, became necessary that Clover enter into another agreement with Stanley D. Fejta wherein for a fee of $10,000.00 Fejta would lend his financial support to the securement of the required performance bond.
Under date of February 9, 1973, Clover, Reine and Fejta entered into an agreement which was entitled “JOINT VENTURE AGREEMENT FOR SITE IMPROVEMENT OF FOUNTAIN ESTATES ADDITION NUMBER 2.” The agreement, signed by all three of these parties, provided:
“STANLEY D. FEJTA agrees to Joint Venture, execute contract and idemnify (sic) the bond for the construction of the Site Improvement of Fountain Estates, Addition No. 2, Slidell, Louisiana.
“Clover Construction Corporation, and George E. Reine, III, agrees to pay to Stanley D. Fejta a flat agreed fee of $10,000, excluding the bond premium and any other costs for which the owner and/or Clover Construction Corporation and George E. Reine, III, is responsible, for assistance in estimating, purchasing materials, and bond idemnification. (sic) Payment of the fee shall be made to Fejta as money is released as provided in the contract documents. Clover Construction Corporation and George E. Re-ine, III, shall be the managing partner of the joint venture and be responsible for the work. A joint account shall be set up for all disbursements and require two signatures, one from each Clover Construction Corporation and Stanley D. Fejta, individually.
“It is understood that all parties of this joint venture are laible (sic) unto United States Fidelity & Guaranty, Surety, jointly and in solido.”
A performance bond was issued by United States Fidelity & Guaranty Company (U.S.F.&G.) in the amount of the contract, naming as the principals Clover, Reine and Fejta and denominating their legal relationship as “A Joint Venture.”
The performance bond is dated February 6, 1973, and was to cover “Site Improvements of Fountain Estates Addition Number 2, Slidell, St. Tammany Parish, Louisiana, in accordance with drawings and specifications prepared by Borgen Engineering of Slidell, Louisiana.” On February 22, 1973, United States Fidelity & Guaranty Company issued a policy of workmen’s compensation insurance, designating the insured as:
“CLOVER CONSTRUCTION CORPORATION & STANLEY D. FEJTA, A Joint Venture Box 248
Slidell, Louisiana 70458”
On April 25, 1973, Allen Troyani, a regular employee of Clover, was sent to work at Fountain Estates and while doing so sustained injuries.
On April 25, 1973, and for some time prior thereto Aetna Insurance Co. (Aetna) *347 had issued a similar policy of workmen’s compensation to Clover, covering the latter’s employees.
As a result of the injuries sustained by Troyani, claim was made on U.S.F.&G. for workmen’s compensation benefits. U.S. F.&G. denied coverage on the grounds that its policy was “written in the name of the joint venture” and would only be applicable if Troyani’s employer, Clover, did not carry other workmen’s compensation coverage. Aetna accorded Troyani and Clover workmen’s compensation benefits, which included an eventual settlement with Troyani in an aggregate sum of $13,689.93. Aetna then instituted this action seeking indemnification for the above sum or, in the alternative, contribution to the extent of one-half thereof.
In his written reasons for judgment the trial judge concluded that the arrangement entered into between Clover, Reine and Fejta was not a joint venture. He reasoned that inasmuch as U.S.F.&G. insured a “Joint Venture”, which did not in fact and law exist, U.S.F.&G. was not liable. For reasons hereinafter stated, we reverse.
On appeal, Aetna does not really contend that there was in fact a “joint venture” but argues (1) that under the terms of the insurance contract issued by Aetna, the terms thereof control and under R.S. 23:1162(A) the insurer cannot interpose an objection as to coverage that could not be raised by the employer; (2) that when there exists a mutual mistake and the insurance contract does not accurately reflect the real party at interest, the contract should be reformed to reflect the true intention of the parties; (3) that an employer (Clover) has the right to purchase different workmen’s compensation policies for each job or business in which it engages, R.S. 23:1162(B); and (4) that Aetna, having issued the policy, collected an initial premium, and when following an audit, readjusted the premium to and collected a higher rate, is now estopped from denying coverage.
U.S.F.&G.’s defense is twofold. First, it agrees with the finding of the trial court that there was no joint venture and therefore the policy was ineffective. Second, that if there was a joint venture, the same was the principal contractor and Clover, who did all of the work, was a subcontractor. In which event, the joint venture (and U.S.F.&G.) is only secondarily liable and would be responsible only in the event that the subcontractor, Clover, was without other insurance or incapable of providing its employees with workmen’s compensation benefits.
We have no quarrel with the conclusion of the trial judge to the effect that the relationship between Clover, Reine and Fejta did not constitute a true joint venture. The factors of mutual endeavor, control, and participation for profit are not present. The effect of the establishment of a joint venture is to create as between the participants a relationship similar to that found in a partnership with the same liability and responsibility as is imposed upon partners. Ault & Wiborg Co. of Canada, Ltd. v. Carson Carbon Co. et al, 181 La. 681, 160 So. 298 (1935); Suckle v. Hartford Accident and Indemnity Company, 163 So.2d 564 (La.App. 2d Cir. 1964), writ refused 246 La. 582, 165 So.2d 481; Villarrubia v. Roy, 162 So.2d 86 (La.App. 4th Cir. 1964); and Williamson v. Roberts, 103 So.2d 499 (La.App. 2d Cir. 1958). Therefore, the issue here presented must be resolved on the basis that there was no joint venture. This is of little comfort, however, to appellant.
No one in this litigation contends that there was any intent to deceive U.S.F.&G. when the contemplated endeavor was, by three laymen, thought to be a joint venture. An agent for U.S.F.&G. testified that he had represented Mr. Fejta for a number of years and had issued many policies on “joint ventures” entered into by the latter, wherein Fejta “furnishes them (contractors) credit, bond credit” and “we insist on protecting Fejta’s interest.” But Fejta was not the only participant to the enterprise stated in the policy to comprise the “joint venture”. Clover was also named. U.S.F.&G.’s concern as to and its protection of Fejta must *348 also extend to Clover, no more and no less. According to U.S.F.&G.’s argument, if there was no “joint venture” not even Fejta would be protected. This is contrary to U.S.F.&G.’s avowed purpose.
The three instruments namely, the “joint venture” agreement, the subject policy, and the performance bond, were all confected, issued and obtained to cover one specific endeavor, Fountain Estates Addition Number 2 project.
U.S.F.&G., through its agent, was familiar with the participants, the purpose of each of these instruments, the particular interest of the participants, and most importantly, the area and limits of its own responsibility. It cannot now avoid that responsibility.
R.S. 22:619(A) provides:
A. Except as provided in Sub-section B of this Section and R.S. 22:692, no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or avoid the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive.
The representation that there existed a joint venture was not given with any intent to deceive. To the contrary, it was the sincere belief of the concerned participants.
Further, the scope of U.S.F.&G.’s liability was particularly designated, the project aforesaid. Thus, the fact that there existed no joint venture did not increase, extend or enlarge the moral or physical hazard sought to be insured.
U.S.F.&G.’s policy did not contain any of the typical “other insurance” or “prorate” clauses or endorsements. Under these circumstances Clover and Fejta must be deemed to have been insured individually insofar as this one particular project is concerned. U.S.F.&G. issued the policy, collected the initial premium from Clover, subsequently audited Clover’s payroll (as to the project), billed to and collected from Clover an additional adjusted premium. U.S. F.&G. is estopped to deny coverage. McLain v. National Mutual Casualty Co., 28 So.2d 680 (La.App. 2d Cir. 1946).
The net result is that Clover had two policies of insurance, one with Aetna covering all of its activities and another with U.S.F.&G. covering the project secured with Fejta’s financial assistance. Since neither of these policies contained any restriction or limitation on coverage both insurers are liable for injuries sustained by a Clover employee on the subject project.
We find no merit in Aetna’s contention that inasmuch as the U.S.F.&G. policy was intended to cover a particular activity that its insurer on that activity is primarily responsible. It is on this basis that Aetna seeks complete indemnification. Rather, absent any limitations or pertinent policy provisions, the loss sustained should be covered by both as each is individually liable to the employee. Aetna’s relief is limited to contribution of one-half of the amount of the loss.
Accordingly, for the above reasons, the judgment of the district court is reversed and judgment is rendered herein in favor of the plaintiff and against the defendant in the full and true sum of SIX THOUSAND EIGHT HUNDRED FORTY-FOUR AND 96/100 ($6,844.96) DOLLARS, together with legal interest thereon from the date of judicial demand until paid, and for all costs of these proceedings.
REVERSED AND RENDERED.