| | | |
|---|---|---|
| THE LEMOINE COMPANY, L.L.C., METRO SERVICE MANAGEMENT GROUP, LLC, AND THE MCDONNEL GROUP, LLC | * | NO. 2022-CA-0217 |
| | * | |
| | | COURT OF APPEAL |
| | * | |
| | | FOURTH CIRCUIT |
| VERSUS | * | |
| | | STATE OF LOUISIANA |
| THE ERNEST N. MORIAL EXHIBITION HALL AUTHORITY, JERRY REYES, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE ERNEST N. MORIAL NEW ORLEANS EXHIBITION HALL AUTHORITY AND NEW ORLEANS PUBLIC FACILITY MANAGEMENT, INC. | * * * * * * * | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2021-07651, DIVISION "M"
Honorable Paulette R. Irons, Judge
* * * * * *
**Judge Karen K Herman**
* * * * * *
(Court composed of Chief Judge Terri F. Love, Judge Roland L. Belsome, Judge Tiffany Gautier Chase, Judge Dale N. Atkins, and Judge Karen K. Herman)

***BELSOME, J., DISSENTS IN PART AND ASSIGNS REASONS***
***CHASE, J., CONCURS IN THE RESULT***

Daniel E. Davillier
Charles F. Zimmer, II
Jonathan D. Lewis
DAVILLIER LAW GROUP, LLC
935 Gravier Street, Suite 1702
New Orleans, LA 70112

    COUNSEL FOR PLAINTIFFS/APPELLANTS

Larry M. Roe
Bradley C. Guin
ROEDEL PARSONS BLACHE FONTANA PIONTEK & PISANO, A.L.C.
8440 Jefferson Hwy., Suite 301
Baton Rouge, LA 70809

      COUNSEL FOR DEFENDANT/APPELLEE


Cherrell Simms Taplin
Shannon S. Holtzman
LISKOW & LEWIS
Hancock Whitney Center
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099

      COUNSEL FOR APPELLEE/DEFENDANT-in-INTERVENTION
      AECOM HUNT/BOARDMOOR, A JOINT VENTURE

**REVERSED AND REMANDED**
**APRIL 12, 2023**

KKH
TFL
DNA

Appellants, The Lemoine Company, L.L.C., Metro Service Management Group, L.L.C., and The McDonnel Group, L.L.C. (collectively, "Lemoine") appeal the December 17, 2021 judgment denying their petition for permanent injunction. Appellees, The Ernest N. Morial Exhibition Hall Authority and AECOM Hunt/Broadmoor, A Joint Venture, filed motions to dismiss the appeal. For the following reasons, we deny the motions to dismiss the appeal, reverse the December 17, 2021 judgment, and remand the matter for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

This lawsuit stems from a public works dispute. The Ernest N. Morial Exhibition Hall Authority ("Authority"), a political subdivision of the State of Louisiana, operates the Ernest N. Morial New Orleans Convention Center. A thirteen-member board of commissioners ("Board") governs the Authority. The Authority developed a capital improvement plan for improvements and renovations with an estimated budget of $300 million dollars.

In May 2021, the Authority issued a request for qualifications ("RFQ") to select a contractor to act as the construction manager pursuant to the construction management at risk statute ("CMAR"), La. R.S. 38:2225.2.4.

The CMAR statute is contained in Chapter 10 "Public Contracts," of Title 38, "Public Contracts, Works and Improvements."[1] The CMAR statute, though encompassed in the public bid laws, provides an alternative to traditional public bid procurement. La. R.S. 38:2225.2.4(A)(2). The statute defines "CMAR" as:

> … a delivery method by which the owner uses a design professional, who is engaged by the owner for professional predesign or design services, or both. The owner contracts separately with a CMAR contractor to engage in the preconstruction phase. As specified in this Section, the same CMAR contractor may also provide construction services to build the project.

La. R.S. 38:2225.2.4(B)(1). The CMAR delivery method allows a contractor to be involved in the preconstruction phase to assist in determining the constructability of the project. La. R.S. 38:2225.2.4(B)(2)(a). The statute sets forth several reasons for using the CMAR method: "collaboration and cost control; concurrent execution of design and construction; a complex project with a tight time frame; owner, designer, and contractor with mutual project goals; risk identification controlled by owner; and minimization of the risk of construction and design disputes by using a collaborative process." La. R.S. 38:2225.2.4(A)(2).

The RFQ provided that the CMAR contractor would be responsible for the preconstruction phase of the project. It mandated that the respondents[2] to the RFQ

---

[1] *See also* La. R.S. 38:2225.2.4(H) (stating that "[t]he provisions of this Section shall supersede any conflicting provisions of any law, including but not limited to the requirements of Chapter 10 of this Title, but the provisions of such Chapter shall otherwise be applicable to such contracts").

[2] Respondent is defined in Sec. 1.3 of the RFQ as "any firm entity, Corporation, Limited Liability Company (LLC) or Joint Venture (JV) that submits a Statement of Qualifications (SOQ) in response to this RFQ and who will be executing contact(s) with OWNER should it be

be "licensed in Building Construction in accordance with the rules of the Louisiana State Licensing Board for Contractors at the time of the submittal of its SOQ [Statement of Qualifications]."[3] The Louisiana State Licensing Board for Contractors ("LSLBC") is responsible for granting licenses to qualified contractors pursuant to the applicable licensing law. La. R.S. 37:2153.

In June of 2021, the Authority received three proposals in response to the RFQ: one from Lemoine; one from AECOM Hunt/Broadmoor, a Joint Venture ("AECOM"); and one from Woodward, Landis, VPG, GH Mechanical, and CDW Services ("Woodward"). Each of the respondents submitted their proposals as a joint venture. The record, however, shows that AECOM had registered as a partnership with the Louisiana Secretary of State in January 2021.[4]

The Authority appointed a selection review committee consisting of a neutral design professional, a neutral licensed contractor, an owner's representative, and two at-large members to review and score the proposals. After conducting a review, on July 27, 2021, the selection review committee recommended the project be awarded to AECOM.

The Board voted to request the selection review committee reconvene in a public setting to reconsider its recommendation. On August 23, 2021, the selection review committee held a meeting in a public setting to reconsider the proposals.

---

selected." Statement of Qualification or SOQ is defined in the RFQ as "submittal of information" by a respondent in response to the RFQ.

[3] *See* Sec. 7.9(3) of the RFQ.

[4] The Secretary of State documents show that "AECOM HUNT | BROADMOOR, A JOINT VENTURE" was registered as a Louisiana partnership on January 14, 2021. AECOM initially listed Hunt Construction Group, Inc. and Broadmoor Construction, L.L.C as the general partners. On January 25, 2021, the partnership document was amended and Hunt Construction Group, Inc. and Broadmoor, L.L.C were listed as the partners.

After public comment, the selection review committee voted unanimously to recommend AECOM be awarded the contract.

Thereafter, Lemoine submitted a formal protest requesting that AECOM be disqualified because it does not meet the licensing requirements set forth in the RFQ. Particularly, Lemoine contended AECOM is a partnership. It argued while the individual members of the partnership possessed contractor licenses at the time of the RFQ, the partnership did not have a separate license. Lemoine claimed that Louisiana law, the LSLBC, and the RFQ required that a partnership possess its own license.

The Board requested the LSLBC determine whether AECOM was properly licensed. The LSLBC compliance director issued a letter dated August 24, 2021, informing the Board that AECOM is registered as a partnership with the Secretary of State and is "unlicensed as a contractor by LSLBC." It further advised that the component members of AECOM, Hunt Construction Group, Inc. and Broadmoor, L.L.C., possessed licenses as individual entities.[5]

The Board held a hearing on August 25, 2021, to take action on the recommendation. The Board received numerous public comments and discussed the letter from the LSLBC compliance director. At the close of comments, the Board voted to award the CMAR contract for preconstruction services to AECOM as recommended by the Selection Review Committee.

On September 23, 2021, Lemoine filed suit against the Authority seeking to enjoin the Authority from awarding the CMAR contract. The petition asserted the

---

[5] The LSLBC letter also set forth the definitions of contractor under La. R.S. 37:2150.1(4)(a); a person under La. R.S. 37:2150.1(9); a partnership under La. C.C. art. 2801; and a joint venture under the LSLBC Rule 307.

selection of AECOM as the contractor was arbitrary and capricious. *See* La. R.S. 38:2225.2.4(D) (providing that CMAR contract cannot be challenged by any legal process "except for fraud, bias for pecuniary or personal reasons not related to the taxpayers' interest, or arbitrary and capricious selection by the owner"). On September 24, 2021, AECOM filed a petition to intervene.

A hearing on the preliminary injunction was held on October 13, 2021, and the trial court granted the preliminary injunction from the bench, enjoining the Authority from entering into the contract with AECOM. Judgment to that effect was executed on October 28, 2021.

Thereafter, a one-day bench trial was held on December 10, 2021, on the request for a permanent injunction, wherein the parties presented numerous witnesses and documents. The parties also submitted post-trial memoranda. On December 17, 2021, the trial court issued a judgment denying Lemoine's request for a permanent injunction and provided reasons for judgment, wherein the trial court found the Authority's decision to award the contract to AECOM was not arbitrary or capricious.

This appeal follows.

<strong>DISCUSSION</strong>

**Motions to Dismiss**

AECOM and the Authority filed motions to dismiss the appeal as moot. They argue that the action that Lemoine sought to enjoin – the execution of the CMAR contract – occurred on March 3, 2022. AECOM and the Authority contend because there is no action to enjoin or prohibit, Lemoine's appeal is moot and that this Court lacks subject matter jurisdiction thereof.

Lemoine filed an opposition to the motions to dismiss, contending a justiciable controversy exists because Lemoine still may be awarded the contract for the construction phase of the project. Lemoine further argues it has an unresolved claim for damages via an ordinary proceeding that would be subject to an exception of *res judicata* if this Court does not rule on the merits.

An appellate court effectively lacks jurisdiction when all the legal controversies arising from the judgment become moot as there is no subject matter on which the judgment can operate. *Fid. Bank v. Succession of Dowden*, 2020-0241, p. 6 (La. App. 4 Cir. 10/7/20), __ So.3d __, 2020 WL 5939215 *3 (citing *Allums v. Allums,* 2017-0021, p. 3 (La. App. 4 Cir. 5/31/17), 221 So.3d 191, 193). The "justiciable controversy" must normally exist at every stage of a proceeding, including the appellate stage. *Id*.; *see also Cat's Meow, Inc. v. City of New Orleans Through Department of Finance*, 1998–0601, p. 9 (La. 10/20/98), 720 So.2d 1186, 1193.

The Louisiana Supreme Court has defined a "justiciable controversy" as "an existing actual and substantial dispute, as distinguished from one that is merely hypothetical or abstract, and a dispute which involves the legal relations of the parties who have real adverse interests, and upon which the judgment of the court may effectively operate through a decree of conclusive character." *In re Coop. Endeavor Agreement Between 42nd Jud. Dist. Dist. Attorney's Off. & 42nd Jud. Dist. Pub. Def.'s Off.*, 2018-1644, 2018-1654, p. 1 (La. 4/15/19), 267 So.3d 581, 583 (quoting *Abbott v. Parker*, 259 La. 279, 249 So.2d 908, 918-19 (1971) (defining justiciable controversy in the context of a declaratory judgment)); *see also Ventana Prop. Mgmt., Inc. v. Hous. Auth. of New Orleans,* 2001-1297, p. 7 (La. App. 4 Cir. 3/27/02), 815 So.2d 324, 328.

"An issue is 'moot' when a judgment or decree on that issue has been 'deprived of practical significance' or 'made abstract or purely academic.'" *Edward v. Badie*, 2019-0332, p. 2 (La. App. 4 Cir. 8/28/19), 282 So.3d 269, 270–71 (*quoting Cat's Meow, Inc.* 1998-0601, p. 8, 720 So.2d at 1193). "A case is 'moot' when a rendered judgment or decree can serve no useful purpose and give no practical relief or effect." *Id*. Several reasons exist whereby a case may become moot during the course of litigation:

> … the law has changed; because defendant has paid moneys owed and no longer wishes to appeal, notwithstanding plaintiff's desire to obtain a higher court ruling; because allegedly wrongful behavior has passed, been mooted, and could not reasonably be expected to recur; because a party could no longer be affected by a challenged statute; for example, a law regulating rights of minors when the party, through lapse of time, is no longer within the age brackets governed by the statute; or because a party has died.

*Cat's Meow, Inc.,* 1998-0601, p. 9, 720 So.2d at 1193 (*quoting* ROTUNDA & NOWAK, TREATISE ON CONSTITUTIONAL LAW, Vol. 1, §2.13).

Generally, in those instances wherein the action sought to be enjoined has already occurred, appellate courts will not consider the propriety of the trial court's denial or grant of an injunction. *Fid. Bank*, 2020-0241, p. 7, 2020 WL 5939215 *3 (citing *Whitney Nat. Bank of New Orleans v. Poydras Ctr. Associates*, 468 So.2d 1246, 1248 (La. App. 4th Cir. 1985)). "Injunction may be used to prevent but not to correct the wrong; it cannot be employed to redress an alleged consummated wrong or undo what has already been done." *Id*. (*quoting Verdun v. Scallon Bros. Contractors, Inc*., 263 La. 1073, 1078, 270 So.2d 512, 513 (1972)).

We do not find that this matter is moot. While the CMAR statute is contained within the public bid laws, as noted above, CMAR projects differ from traditional public bid projects. The CMAR statute allows for the design and

7

planning phase before the construction phase. The public entity contracts

separately to engage in the preconstruction phase and then the construction phase

to build the project. *See* La. R.S. 38:2225.2.4(B)(1) (stating "[t]he owner contracts

separately with a CMAR contractor to engage in the preconstruction phase" and as

specified in the CMAR statute "the same CMAR contractor may also provide

construction services to build the project"). Thus, while the preconstruction CMAR

contract with AECOM may have been executed, if we find that the trial court erred

in denying the permanent injunction and that the Authority was arbitrary and

capricious in awarding the contract to AECOM, Lemoine could be awarded the

construction phase of the project.[6] Therefore, a justiciable controversy exists for

which relief is available. Further, if the project has progressed too far so that

awarding the contract to Lemoine would be impractical, Lemoine may be entitled

to damages due to the Authority's awarding the contract to AECOM.[7]

Additionally, if this Court did not address the validity of the decision to award

AECOM the contract, parties could merely execute a contract and challenge the

---

[6] In August of 2022, Louisiana legislature amended the CMAR statute to provide "[i]f the owner deems the highest scored or ranked proposer to be nonresponsive or nonresponsible, then the public entity may award the project to the next highest scored or ranked proposer." *See* La. R.S. 38:2225.2.4(F)(6). This provision, however, was not contained in the statute at the time of the RFQ. Nevertheless, because the CMAR contracts are entered into separately for the preconstruction and construction phases, the issue before the Court is not moot.

[7] *See Command Const. Industries, L.L.C. v. City of New Orleans,* 2013–0524, 2013-0525, p. 12 (La. App. 4 Cir.10/23/13), 126 So.3d 716, 723 (indicating that an unsuccessful bidder who timely seeks an injunction may recover damages against a public body which awards a public contract in violation of the public bid law); *see also D & O Contractors, Inc. v. St. Charles Parish,* 2000–882, p. 7 (La. App. 5 Cir. 2/28/01), 778 So.2d 1285, 1290 (which noted that "there is no question that an unsuccessful bidder may also seek damages once a contract is awarded pursuant to a defective bid"); *see also State Mach. & Equip. Sales, Inc. v. Livingston Par. Gravity Drainage Dist. No. 54,* 2000-2066, p. 6 (La. App. 1 Cir. 11/14/01), 818 So.2d 133, 137 (recognizing "when an aggrieved bidder on a public works project has timely filed a suit for injunctive relief, the bidder may recover damages against a public entity" and that "the question of whether a public contract was properly awarded is not rendered moot by the fact that injunctive relief is no longer available").

appeal as moot to avoid appellate review. *See Ryan Gootee Gen. Contractors LLC v. Plaquemines Par. Sch. Bd.*, 2018-0276, p. 10 (La. App. 4 Cir. 11/7/18), 318 So.3d 1022, 1030 (*quoting Dynamic Constructors, L.L.C. v. Plaquemines Parish Government*, 2015-0271, pp. 5-6 (La. App. 4 Cir. 8/26/15), 173 So.3d 1239, 1243) (recognizing that "Louisiana's Public Bid Law was enacted in the interest of the taxpaying citizens and has for its purpose their protection against contracts of public officials entered into because of favoritism and involving exorbitant and extortionate prices"). A resolution on the disputed issues in this case will thus serve a useful purpose and afford relief. Accordingly, the case is not moot and we deny the motions to dismiss.[8]

**Merits**

<u>Standard of Review</u>

Appellate courts review the denial of a permanent injunction under the abuse of discretion standard of review. *800 Iberville St. Ltd. P'ship v. V Rest. Grp., L.L.C.*, 2015-0065, p. 5 (La. App. 4 Cir. 5/27/15), 171 So.3d 1016, 1018. The "abuse of discretion standard is highly deferential to the trial court unless the court exercised its discretion based upon an erroneous view of the law or a clearly erroneous view of the facts." *Tran v. Collins*, 2020-0246, p. 5 (La. App. 4 Cir. 8/20/21), 326 So.3d 1274, 1279. As it relates to public works projects, this Court determined:

---

[8] Lemoine also argues that in the event this Court finds that the appeal is moot, exceptions to the mootness doctrine apply. The Louisiana Supreme Court recognized exceptions to the mootness doctrine exist to "prevent either party from creating a technical mootness as a sham to deprive the court of jurisdiction." *Cat's Meow, Inc.,* 1998-0601, p. 9, 720 So.2d at 1193. The jurisprudence recognizes "a substantial public interest can also provide an exception to mootness where the question presented is of a public nature, the complained-of conduct is likely to recur, and an authoritative resolution is desirable to guide public officers." *In re E.W.,* 2009-1589, p. 8 (La. App. 1 Cir. 5/7/10), 38 So.3d 1033, 1038. However, this opinion does not address this argument as it finds a justiciable controversy exists and that the matter is not moot.

9

> Louisiana vests public bodies awarding contracts with discretion subject to judicial review. *Haughton Elevator Division v. State, Through Division of Administration*, 367 So.2d 1161, 1165 (La. 1979). "Courts will not substitute their judgment for the good-faith judgment of the administrative agency." *Id*. This distinction "must be exercised in a fair and legal manner and not arbitrarily." *Id*. A public body's "reasonable, good faith interpretation of its own specifications should not be disturbed by a court whose views might be different." *J.W. Rombach, Inc. v. Parish of Jefferson*, 95-829, p. 13 (La. App. 5 Cir. 2/14/96), 670 So.2d 1305, 1311.

*J. Caldarera & Co., Inc. v. Ernest N. Morial Exhibition Hall Auth.*, 2018-0988, p. 6 (La. App. 4 Cir. 8/7/19), __ So.3d __, 2019 WL 3719544 *3.

For the reasons that follow, we find that the Authority's decision to award the contract to AECOM was arbitrary and capricious and that the trial court abused its discretion in denying Lemoine's request for permanent injunction.

A partnership is defined as "a juridical person, distinct from its partners, created by a contract between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit." La. C.C. art 2801. Joint venture has been defined as a "special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation." *Arcement Boat Rentals, Inc. v. Good,* 2001-1860, p. 6 (La. App. 4 Cir. 5/29/02), 820 So.2d 615, 618 (quoting *Daily States Pub. Co. v. Uhalt*, 169 La. 893, 126 So. 228, 231 (1930)); *see also John River Cartage, Inc. v. Louisiana Generating, LLC*, 2020-0162, p. 20 (La. App. 1 Cir. 3/4/20), 300 So.3d 437, 454.

"The difference between a joint venture and a partnership is that a joint venture generally is formed only for a particular project (venture); whereas, a partnership is formed as an ongoing entity for multiple purposes." *Zacher v. Harrah's New Orleans Mgmt. Co.*, 2013-1237, p. 30 (La. App. 4 Cir. 2/12/14), 136

10

So.3d 132, 152 (citing Frank L. Maraist and Thomas C. Galligan, LOUISIANA TORT LAW (1996)).

Moreover, while Louisiana jurisprudence has acknowledged that joint ventures are analogous to partnerships, this Court has stated "there is no joint []venture where an actual partnership exists or where the business or enterprise is organized and operated in corporate form." *Duncan v. Gill*, 227 So.2d 376, 382 (La. App. 4th Cir. 1969) (quoti*ng Daily States Publishing Company, Limited v. Uhalt*, 169 La. 893, 901, 126 So. 228, 231); *see also Ault & Wiborg Co. of Canada v. Carson Carbon Co.*, 181 La. 681, 688, 160 So. 298, 300 (La. 1935).

At the time the respondents submitted their proposals to the RFQ, the LSLBC provided that "[i]t shall be unlawful for any person to engage ... or to act as a contractor as defined in this Chapter, unless he holds an active license as a contractor under the provisions of this Chapter."[9] La. R.S. 37:2160(A)(1). A "contractor" was defined as:

> … any person who undertakes to, attempts to, or submits a price or bid or offers to construct, supervise, superintend, oversee, direct, or in any manner assume charge of the construction, alteration, repair, improvement, movement, demolition, putting up, tearing down, or furnishing labor, or furnishing labor together with material or equipment, or installing the same for any building, highway, road, railroad, sewer, grading, excavation, pipeline, public utility structure, project development, housing, or housing development, improvement, or any other construction undertaking ...

La. R.S. 37:2150.1(4)(a).

At the relevant time period, "person" was defined as "any individual, firm, partnership, association, cooperative, corporation, limited liability company,

---

[9] Section 7.9 of the RFQ specifically states that the Respondent to the RFQ "shall be licensed in accordance with the rules of the Louisiana State Licensing Board at the time of submittal of its SOQ [Submittal of Qualifications]."

limited liability partnership, or any other entity recognized by Louisiana law."[10] La. R.S. 37:2150.1(9).[11] The CMAR statute also defines a "CMAR contractor" as a "person, sole proprietorship, partnership, corporation, or other legal entity, properly licensed, bonded, and insured[.]" La. R.S. 38:2225.2.4(B)(2).

On appeal, Lemoine argues the trial court erred by failing to find that the Authority's decision to award the CMAR contract to an unlicensed juridical person was arbitrary and capricious. Lemoine claims that because AECOM was registered as a partnership and because a partnership is a distinct juridical person, it was required to possess a proper license to qualify for the contract. To support this argument, Lemoine relies on *Lemoine/Brasfield & Gorrie Joint Venture, L.L.C. v. Orleans Par. Criminal Sheriff's Office*, 2010-1220, p. 8 (La. App. 4 Cir. 3/30/11), 63 So.3d 1068, 1073.

In *Lemoine/Brasfield*, two companies, the Lemoine Company and Brasfield & Gorrie, L.L.C., formed the Lemoine/Brasfield & Gorrie Joint Venture, L.L.C. ("Lemoine/Brasfield"), for the purpose of bidding on a public works contract for the Orleans Parish Criminal Sheriff's Office. *Lemoine/Brasfield & Gorrie Joint Venture, L.L.C.*, 2010-1220, pp. 1-2, 63 So.3d at 1070. Lemoine/Brasfield's bid was rejected because there was no license in the name of the limited liability company, although each of the individual component companies had a license. *Id.*, p. 2, 63 So.3d at 1070. The Sheriff's Office then awarded the contract to the

---

[10] "Person" previously included joint ventures. Following an amendment, in 1997, the Louisiana legislature removed joint venture from the definition of a person. *See* 1997 La Sess. Law Serv. Act 770; *J. Caldarera & Co. v. Hosp. Serv. Dist. 2 of Par. of Jefferson,* 97-1025, p. 4, n. 2 (La. App. 5 Cir. 2/11/98), 707 So.2d 1023, 1025, *writ denied sub nom. J. Caldarera & Co. v. Hosp. Serv. Dist. No. 2 of Par. of Jefferson*, 98-0644 (La. 4/24/98), 717 So.2d 1177 (noting that "the term 'joint venture' has been deleted from the definition of person" in La. R.S. 37:2150.1). Rule 307 applicable to joint ventures will be discussed later herein.

[11] The definition of a person is currently set forth in La. R.S. 37:2150.1(12).

second lowest bidder and Lemoine/Brasfield filed suit. The trial court determined the limited liability company was required to obtain a license in its own name and denied the request for injunctive relief. *Id.*, pp. 2, 8, 63 So.3d at 1071, 1073.

Lemoine/Brasfield argued on appeal that each of its component companies hold individual licenses and because the companies formed a "joint venture," it was not required to have a separate license. *Id.*, p. 6, 63 So.3d at 1072. This Court disagreed and affirmed the trial court's decision, stating, in relevant part:

> … While the limited liability company's name contains the words "joint venture," including the words "joint venture" in a name does not necessarily make it such. Further, while a joint venture is not required to get an additional license to be deemed a responsible bidder under the Public Works Act, a limited liability company is required to hold a license.
>
> Lemoine/Brasfield captioned their effort a "joint venture" and formed a limited liability company. Under the instant facts, the formation of this new legal entity made Lemoine/Brasfield subject to the requirements set forth under public bid law for limited liability companies.
>
> We find that the trial court correctly interpreted the applicable law to provide that under the instant facts, a limited liability company is required to obtain a license although its name contains the words "joint venture." Appellant formed a limited liability company, which made it a "person." State bid law and state contracting law require that the entity that is awarded the contract be licensed, and the limited liability company at issue did not meet this requirement. Lemoine/Brasfield is thus a non-licensed bidder, and we find that the OPCSO [Sheriff's Office] did not act arbitrarily or unfairly in disqualifying Lemoine/Brasfield. We therefore find no error in the trial court's judgment.

*Id.* at p. 8, 63 So.3d at 1073.

Lemoine claims that similar to the limited liability company in *Lemoine/Brasfield*, AECOM cannot ignore the legal impacts of their registered partnership and including the phrase "joint venture" in AECOM's partnership name does not discount its partnership status and transform AECOM from a

juridical person/partnership into a joint venture. Lemoine also notes prior to reaching its conclusion in *Lemoine/Brasfield*, the Fourth Circuit cited La. R.S. 37:2150.1(9), which defines a limited liability company as a person and also includes partnership as a person. Lemoine thus claims that AECOM as a partnership was a juridical person and required to possess a license.

The Authority and AECOM concede that AECOM registered as a partnership with the Louisiana Secretary of State but claim Hunt and Broadmoor formed a joint venture for the purpose of bidding on the CMAR project.[12] They note that LSLBC Rule 307 provides that "[w]hen two or more persons bid as a joint venture on any project in the amount for which a license is required from the board, all parties to the joint venture are required to be licensed by the board at the time the bid is submitted." 46 La. Admin. Code Pt XXIX, 307. As such, they claim AECOM was not required to get a separate license and that it was sufficient that the companies forming AECOM possessed licenses. The Authority and AECOM argue that joint ventures are merely a type of partnership and AECOM's registration as a partnership was solely to inform the public of "who they are." In the same vein, the Authority and AECOM also argue *Lemoine/Brasfield* is distinguishable because the entity therein was converted into an LLC when it registered whereas in the present case AECOM is a joint venture and as a "species of partnership" remained so after registering with the Secretary of State.[13] The

_____

[12] The Authority and AECOM filed separate briefs in opposition to Lemoine's appeal but contain similar arguments.

[13] The Authority also claims that *J. Caldarera & Co.,* 97-1025, 707 So.2d 1023, is applicable to the present case. In *J. Caldarera*, the plaintiff-corporation who submitted a bid for a public works project, filed an injunction alleging that the lowest bidder, Manhattan/Gibbs joint venture, was not properly licensed because it did not have a license separate from its members, as required by the statute as it read at that time. At the time La. R.S. 37:2150.1(9) included any "joint venture" in the definition of "person." Plaintiff argued, because the statute at the time

14

Authority also contends the *Lemoine/Brasfield* decision hinged on Administrative Rule 1103 at the time, and it has since changed with the adoption of Rule 307, and thus *Lemoine/Brasfield's* holding is inapplicable.

We do not find the arguments of the Authority and AECOM convincing. As noted above, Louisiana jurisprudence has acknowledged that joint ventures are similar to partnerships. *See Duncan*, 227 So.2d at 382; *Ault & Wiborg Co. of Canada*, 181 La. at 688, 160 So. at 300. Louisiana courts have also noted that because the "essential elements of a joint venture are generally the same as those of partnership, i.e., two or more parties combining their property, labor, skill, etc., in the conduct of a venture for joint profit, with each having some right of control[;]" joint ventures are treated "as a species of partnership, and governed by the law of partnerships." *See Coffee Bay Invs., L.L.C. v. W.O.G.C. Co*., 2003-0406, pp. 7-8 (La. App. 1 Cir. 4/2/04), 878 So.2d 665, 670 (citing *Cajun Elec. Power Coop., Inc. v. McNamara,* 452 So.2d 212, 215 (La. App. 1 Cir. 1984). However, both the Louisiana Supreme Court and this Court have recognized "there is no joint []venture where an actual partnership exists." *Ault & Wiborg Co. of Canada*, 181

provided that a "joint venture" is a "person," and because a "person" must be licensed, then the joint venture must have its own license before it can bid on a public project. The plaintiff thus argued that the bid filed by Manhattan/Gibbs should not have been accepted. After citing the applicable contractor licensing law, the Fifth Circuit also noted that Administrative Rule 1103(B), at the time, provided that [w]hen two or more contractors bid as a joint venture on any project in the amount of $50,000.00 or more, not in conflict with R.S. 37:2150 *et seq*., all parties are required to be licensed at the time the bid is submitted." *See J. Caldarera & Co.,* 97-1025, p. 707 So.2d at 1025. The Court found that upon "reading the statutes in *pari materia* with the administrative rules" that the trial court "correctly interpreted the applicable law to provide that a *joint venture* is *properly licensed* when *each* of its members holds a valid license and, therefore, that joint venture itself is *not required* to get *an additional license* to be a responsible bidder under the Public Works Act." *J. Caldarera & Co.,* 97-1025, p. 7, 707 So.2d at 1026 (emphasis in original). However, *J. Caladera* is distinguishable because the definition of person at the time of its decision included "joint venture." In the present case as well as in the *Lemoine/Brasfield* case, joint venture is not contained in the definition of a person. *See* La. R.S. 37:2150.1(9); *Lemoine/Brasfield & Gorrie Joint Venture, LLC,* 2010-1220, p. 7, 63 So.3d at 1073. Moreover, unlike the contractor in *J. Caldarera*, which was a joint venture, AECOM registered as a partnership and was required to hold its own license separate from each of its members.

La. at 688, 160 So. at 300; *Duncan*, 227 So.2d at 382; *see also Daily States Pub. Co.*, 126 So. at 231 (defining a joint venture as a "special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation"); *Grand Isle Campsites, Inc. v. Cheek*, 262 La. 5, 19, 262 So.2d 350, 355 (La. 1972); *Arcement Boat Rentals, Inc.*, 2001-1860, p. 6, 820 So.2d at 618).

Here, although a joint venture is akin to a partnership because AECOM actually registered as a partnership, AECOM is not a joint venture. Moreover, the cases the Authority and AECOM cite to show that a joint venture is simply a type of partnership did not involve a situation where the entity had registered as a partnership with the Secretary of State and thus are irrelevant to the present case.[14]

Additionally, we find *Lemoine/Brasfield's* holding dispositive of the issue before this Court. Like the limited liability company in *Lemoine/Brasfield*, AECOM contends that because Hunt and Broadmoor, the companies that make up AECOM, had individual licenses and they formed AECOM as a "joint venture," AECOM was not required to obtain a separate license. However, the Fourth Circuit in *Lemoine/Brasfield* rejected this argument and found when the entity registered as a new juridical entity, it could not avoid the licensing requirements of the law. Similarly, here, while AECOM calls itself a "joint venture," it filed organization

---

[14] For example, in *Garber v. Badon & Ranier*, 2007-1497, p. 2 (La. App. 3 Cir. 4/2/08), 981 So.2d 92, 95, cited by the Authority in their brief, the dispute was between an attorney and a law partnership and its partners. The attorney was claiming he was a "joint venturer" with the partnership. The partnership and the attorney did not jointly file documents with the Secretary of State indicating it had formed a juridical entity. In fact, the attorney, Garber, admitted he was not a member of Badon & Ranier Partnership and there was evidence that Rainer and Badon were the only two partners in the firm. *See also Coffee Bay Invs., L.L.C.*, 2003-0406, pp. 6-7, 878 So.2d at 669 (wherein an LLC/investment company and a gas and well operator/corporation entered into an agreement relating to the exploration and development of a mineral rights prospect in Lafourche Parish; no organizational documents were filed registering the LLC and corporation as members of partnership).

documents to create a partnership, and thus AECOM was required to possess its own contractor's license.

With regard to the argument that *Lemoine/Brasfield* is inapplicable, the Authority is correct in that the *Lemoine/Brasfield* Court relied in part on La. R.S. 37:2150.1(9), which provided that a "person" includes a "limited liability company," and Administrative Rule 1103 on joint ventures, are conflicted. *Lemoine/Brasfield & Gorrie Joint Venture, LLC,* 2010-1220, p. 8, 63 So.3d at 1073 ("[r]eading the statutes *in pari materia* with the administrative rule, we find the matter before us in direct conflict with the requirements of La. R.S. 37:2150 *et seq*). Administrative Rule 1103 provided "[w]hen two or more contractors bid as a joint venture on any project in the amount of $50,000.00 or more, *not in conflict with R.S. 37:2150 et seq.,* all parties are required to be licensed at the time the bid is submitted." *Lemoine/Brasfield,* 2010-1220, pp. 5, 7, 63 So.3d at 1072 (emphasis in original). The current rule on joint ventures, set forth in Rule 307, does not contain a provision concerning a conflict with the LSLBC.

Nevertheless, the provisions of Rule 307 on joint ventures are not applicable in this case as AECOM created a partnership when it registered as such with the Secretary of State. Accordingly, the fact that Rule 307 does not contain language regarding conflicting provisions is irrelevant and thus *Lemoine/Brasfield* is still persuasive.

Furthermore, the plain language of the RFQ distinguishes a joint venture from a partnership. Section 1.3 defines a "Joint Venture" or "JV" as a "combination of two or more persons or entities, in which some specific venture for profit is jointly sought *without any actual partnership* or other corporate designations." (emphasis added). The RFQ in this case therefore specifically

17

defined joint ventures to exclude actual partnerships.[15] Also, as noted earlier, Section 7.9(3) requires that the respondents to the RFQ be licensed "in accordance with the rules of the Louisiana State Licensing Board for Contractors" at the time of submittal. Section 7.9 further provides that the "[f]ailure to meet the following requirements [which include licensure] will result in disqualification, and the Respondent will not be further evaluated for selection of CMAR contractor." Thus, under the explicit terms of the RFQ, a joint venture does not exist when an actual partnership exists and failure to be licensed in accordance with LSLBC will result in disqualification. Because AECOM is unlicensed, it was improper for the Authority to award it the CMAR contract. *See Broadmoor, L.L.C. v. Ernest N. Morial New Orleans Exhibition Hall Auth.,* 2004-0211, 2004-0212, p. 6 (La. 3/18/04), 867 So.2d 651, 656 (stating "a political entity has no authority to take any action which is inconsistent with the Public Bid Law");[16] *Leblanc Marine,*

---

[15] Also, Addendum No. 1 to the RFQ, dated May 6, 2021, references the *Lemoine/Brasfield* case. The Addendum provides, in relevant part:

> Q2: Does the Joint Venture need to be licensed as a General Contractor in the State of Louisiana or is it acceptable for each JV entity to be separately licensed?
>
> A2: Section 7.9(3) of the Instructions requires the Respondent to be licensed in Building Construction in accordance with the rules of the Louisiana State Licensing Board of Contractors at the time of submittal of its SOQ. Section 307 of the Louisiana State Licensing Rules and Regulations addresses licensure of joint ventures. However, please *see also Lemoine/Brasfield & Gorrie Joint Venture, LLC v. Orleans Parish Criminal Sheriffs Office,* 2010-1220 (La. App. 4 Cir. 2011) 63 So.3d 1068. Joint venturers are encouraged to consult legal counsel in determining whether their joint venture needs to be separately licensed.

The Addendum thus indicates that AECOM was informed of the *Lemoine/Brasfield* holding and the possible impacts of formally registering as a juridical person but still did not obtain a license.

[16] In *Broadmoor, L.L.C.*, 2004–0211, 2004–0212, p. 8, 867 So.2d at 657, the Louisiana Supreme Court also discussed the 2001 amendments in La. R.S. 38:2212, which addressed bidding advertisements in public work projects. An amendment, now set forth in La. R.S. 33:2212(B)(1), stated the "provisions and requirements of this Section and those stated in the bidding documents shall not be waived by any entity." The *Broadmoor* Court found the amendment shows that a public entity cannot waive any requirements contained in the bidding documents. It stated that

*L.L.C. v. Div. of Admin., Off. of Facility Plan. & Control*, 2019-0053, p. 5 (La. 10/22/19), 286 So.3d 391, 394; *Boh Bros. Constr. Co. v. Par. of Jefferson*, 2020-472, p. 8 (La. App. 5 Cir. 6/2/21), 325 So.3d 500, 506, *writ denied*, 2021-00951 (La. 10/19/21), 326 So.3d 259, *and writ denied*, 2021-00950 (La. 10/19/21), 326 So.3d 261.

We find that disregarding the licensing requirements of its own RFQ and Louisiana licensing law is arbitrary and capricious. AECOM is an unlicensed partnership and thus should not have been considered responsive to the RFQ. As such, we find that the trial court abused its discretion in denying Lemoine's request for permanent injunction and reverse the trial court's judgment.

**CONCLUSION**

The RFQ required that the CMAR contractor be licensed in accordance with the LSLBC rules at the time it submitted its proposal and stated that the failure to

the "language of [La. R.S. 33:2212(B)(1)] is clear and unambiguous: when a public entity elects to place certain requirements in its advertisements for bids and on its bid forms, that entity is bound by those requirements and may not choose to waive them at a later date." *Broadmoor, L.L.C.,* 2004-0211, p. 8, 867 So.2d at 657. Thus, *Broadmoor* arguably suggests the Authority could not waive the RFQ's requirement that the respondent be properly licensed nor could it ignore the fact that partnerships were distinguished from joint ventures in the RFQ itself. However, in *Durr Heavy Const., LLC v. City of New Orleans,* 2016-609, p. 3 (La. 4/15/16), 189 So.3d 384, 386, in a concurrence, then-Chief Justice Johnson, indicated that La. R.S. 38:2212(B)(2), added by the legislature in 2014, mandated that the bidding documents shall require the bidder to submit only the specific information listed. *See* La. R.S. 38:2212(B)(2) (stating "[t]he bidding documents shall require only the following information and documentation to be submitted by a bidder at the time designated in the advertisement for bid opening: Bid Security or Bid Bond; Acknowledgment of Addenda; Base Bid; Alternates; Signature of Bidder; Name, Title, and Address of Bidder; Name of Firm or Joint Venture; Corporate Resolution or written evidence of the authority of the person signing the bid; and Louisiana Contractors License Number, and on public works projects where unit prices are utilized, a section on the bid form where the unit price utilized in the bid shall be set forth including a description for each unit; however, unit prices shall not be utilized for the construction of building projects, unless the unit prices and their extensions are incorporated into the base bid or alternates"). Then-Chief Justice Johnson, stated the statute now "provides an exclusive list of the only twelve items of information which a public entity can require bidders to provide in the 'bidding documents' to evaluate the bid's responsiveness." *Durr Heavy Const., LLC,* p. 3, 189 So.3d at 386. Nevertheless, the general principle that a public entity cannot take acts inconsistent with public bid law has not been overturned. *See Boh Bros. Constr. Co.*, 2020-472, pp. 8, 10, 325 So.3d at 506, 508.

be properly licensed will result in disqualification. LSLBC provides that a partnership is a person and mandates that a person be licensed to be a contractor. The CMAR statute also provides that only persons, which includes "partnerships," holding a proper license can serve as a CMAR contractor. Moreover, the RFQ differentiated between partnerships and joint ventures, and excluded "actual partnership[s]" from the definition of a joint venture. At the time of submission, AECOM was a registered partnership and was not a licensed contractor. AECOM cannot avoid the licensure requirements of a partnership by merely calling itself a joint venture. The Authority's decision to award the contract to AECOM was therefore arbitrary and capricious. Accordingly, the trial court erred in denying the request for permanent injunction.

For these and the above stated reasons, we deny the motions to dismiss the appeal, reverse the December 17, 2021 judgment denying the request for permanent injunction and remand the matter for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**

20